Kelly Renee PETERSON, Plaintiff
and Respondent,

v.

Jerry Allen PETERSON, Defendant
and Appellant.

No. 860179–CA.

Court of Appeals of Utah.

Jan. 21, 1988.

Dwight J.L. Epperson (argued), Salt Lake City, for plaintiff and respondent.

Barbara E. Ochoa (argued), Utah Legal Services, Inc., Provo, for defendant and appellant.

Before BENCH, BILLINGS and GARFF, JJ.

## OPINION

GARFF, Judge:

Plaintiff and defendant were divorced in January 1986, after five years of marriage, during which they had two children. Marital assets were meager. The principal asset was a three-bedroom house, located on ten and one-half acres, in which the family lived during the marriage. Defendant acquired this property, which had been his family home for two generations, prior to the marriage. Defendant also brought a washer and dryer into the marriage.

Defendant valued the house and land at $26,000.00. Plaintiff assessed its worth at $40,000.00. The trial court found that the value of the property had increased $4,000.00 during the marriage, and took this into consideration in distributing the marital assets.

At the time of trial, defendant was unemployed and drawing $830.00 per month in unemployment compensation. When employed as a construction worker, he ordinarily earned $11.50 per hour. The divorce decree required him to pay child support of $100.00 per month per child so long as he

was drawing $830.00 per month in unemployment compensation. If he again became gainfully employed at approximately $11.50 per hour, amounting to an approximate gross monthly income of $1,978.00, his child support payments were to be increased to $185.00 per child per month.

Plaintiff, who had custody of the two children, was receiving public assistance at the time of trial. She was awarded alimony of $1.00 per month, despite her limited job experience and the unlikelihood that she would be able to earn more than minimum wage.

The trial court awarded the house, land, washer, and dryer to defendant, but permitted plaintiff to reside in the house for six months, after which she and the children were required to vacate it.

Plaintiff raises the following issues on appeal: (1) Did the lower court abuse its discretion by awarding the house, land, washer, and dryer to defendant? (2) Was the trial court's method of setting child support an abuse of discretion?

This court will not disturb the lower court's action unless the evidence clearly shows that the property distribution "works such a manifest injustice or inequity as to indicate a clear abuse of discretion." *Gibbons v. Gibbons*, 656 P.2d 407, 409 (Utah 1982). *See Woodward v. Woodward*, 709 P.2d 393, 394 (Utah 1985). The Utah Supreme Court stated that in exercising their discretion in divorce actions, trial courts "need be guided by the general purpose to be achieved by a property division, which is to allocate the property in a manner which best serves the needs of the parties and best permits them to pursue their separate lives." *Burke v. Burke*, 733 P.2d 133, 135 (Utah 1987). Utah Code Ann. § 30-3-5(1) (1987) provides, in part, that "[w]hen a decree of divorce is rendered, the court may include in it equitable orders relating to the children, property, and parties." Thus, the court must be concerned not only with the needs of the parties, but also with those of the children. The court, therefore, has broad discretion in the distribution of property to achieve that which is

in the best interest of the children as well as the parties.

It is generally recognized that, if possible, each party should receive the real and personal property he or she brought into the marriage. *Preston v. Preston*, 646 P.2d 705, 706 (Utah 1982). The trial court adhered to this general rule, but in so doing, ignored the best interests of the children. The children, who were in the custody of their mother, were evicted from the security and stability of their family home and thrust into an uncertain, rootless environment. This result is manifestly unjust.

Utah Code Ann. § 30-4-3 (1984) provides, in part, that:

> In all actions brought hereunder the court may by order or decree provide for the care, custody and maintenance of the minor children of the parties and may determine with which of the parties the children or any of them shall remain; may award to either spouse possession of any of the real or personal estate of the other spouse, and decree monies for support of that spouse and the support of the minor children, and provide how and when payments shall be made, and that either spouse have a lien upon the property of the other to secure payment of the same.

Although this provision pertains to separate maintenance, it emphasizes again that the legislature intended to give the court wide discretion to ensure that children, who are oftentimes the unwitting and unwilling victims of a parental separation or divorce action, are not further traumatized by forcing them out of the little remaining security offered by staying in the family home. "The breakup of their parents' marriage is ... a severe trauma to young children; this additional physical and psychological dislocation [from the family home] should not be imposed upon them unless there is a very good reason indeed for doing so." *Pino v. Pino*, 418 So.2d 311, 312 (Fla.Dist. Ct.App.1982). The best interest of the children may often result in premarital property being distributed to the custodial parent. "Both parents have an obligation to sup-

port their children. A child's right to that support is paramount." *Woodward*, 709 P.2d at 394.

Other jurisdictions have found, under similar circumstances, that until he or she remarries and while he or she has dependent children in the home, the custodial spouse is entitled to occupancy of the family home. The Florida court stated that "[c]ases dealing with the issue of whether the custodial parent should be awarded exclusive use and possession of the marital home until the children reach majority or the parent remarries have almost without exception answered the question affirmatively." *Cabrera v. Cabrera*, 484 So.2d 1338, 1339 (Fla.Dist.Ct.App.1986).

In *Florence v. Florence*, 400 So.2d 1018 (Fla.Dist.Ct.App.1981), the Florida appellate court found that the award of exclusive possession of property was directly connected to the obligation of support. *See Cabrera*, 484 So.2d at 1340. In *Cabrera, supra*, the wife was granted primary custody of the parties' two-year-old child and was ordered to vacate the marital residence along with the child. The husband had purchased the house prior to the marriage. The Florida Court of Appeals, reaffirming *Florence*, held that absent a showing of good reason for removing the wife and child from the marital home purchased by the husband prior to the marriage, the wife was entitled to exclusive occupancy of the residence for herself and the child until she remarried or the child was no longer dependent. *Cabrera*, 484 So.2d at 1340.

The Oregon Supreme Court, in a comparable fact situation, similarly stated that:

"the general approach in dividing property after a short-term marriage is to place the parties as nearly as possible in the financial position they would have held if no marriage had taken place." ... but that would not necessarily be "just and proper in all the circumstances," which include that the parties have continued responsibility for the welfare of a child.

*In re Marriage of Seefeld*, 294 Or. 345, 657 P.2d 201, 204 (1982) (quoting *In re Mar-*

*riage of York*, 30 Or.App. 937, 569 P.2d 32, 33 (1977)).

The *Seefeld* court also stated that:

"[t]he equation of property division and the entitlement of a party to solely [sic] acquired property may be disturbed in order to accomplish broader purposes of a dissolution." A "broader" purpose here is to divide the property so that the child can adequately be cared for.

....

Where earnings and assets are not sufficient to support the needs of the children as well as both parties, however, courts often cannot escape the necessity to determine which combination of support payments, property, and other sources of income will most effectively provide for the children. Frequently this results in an award of the family home to the custodial parent. It may also involve an award of property that helps to meet current needs ... rather than imposing higher child support payments that cannot realistically be counted on.

*Seefeld*, 657 P.2d at 205 (citation omitted) (quoting *In re Marriage of Pierson*, 294 Or. 117, 653 P.2d 1258, 1261 (1982)).

■ The Utah Legislature has clearly stated that the public policy of the State of Utah is that "children shall be maintained from the resources of responsible parents, thereby relieving or avoiding, at least in part, the burden [of support] often borne by the general citizenry through welfare programs." Utah Code Ann. § 78-45b-1.1 (1987). Thus, we do not consider the equities of property division in isolation. *Seefeld*, 657 P.2d at 204; *see In re Marriage of King*, 700 P.2d 591 (Mont.1985). Instead, we construe Utah Code Ann. § 30-3-5(1) to mean that not only may the parties' premarital property be subject to division by the court, but that the court shall consider all the circumstances of the parties in determining the distribution of real and personal property, including the obligations of the parties for child and spousal support.

In the present case, the only resource available to support the children is the family home. It makes no sense for plaintiff

and the children to become public charges while defendant retains title to and possession of the family home for his own purposes. Even though defendant brought this asset into the marriage, equity requires that it be used to supplement the support of the children. The same reasoning applies to the disposition of the washer and dryer.

Further, allowing the children to remain in the family home would serve their emotional best interests by maintaining their roots and security and, thus, helping to ameliorate the trauma of the divorce. Therefore, in the light of the total circumstances, we award exclusive occupancy of the house to plaintiff until she remarries or until the children reach their majority, marry, or otherwise become independent of plaintiff. However, defendant should retain title to the house along with the incumbent responsibility to pay any mortgage or property tax obligations. We remand for determination whether, in equity, defendant should have use of the ten and one-half acres that are not required for the enjoyment and beneficial use of the home.

Child support awards should approximate actual need and, when possible, assure the children a standard of living comparable to that which they would have experienced if no divorce had occurred. In the present case, plaintiff, the custodial parent, has minimal skills and meager prospects to develop the ability to provide appropriate support, and is receiving public assistance to maintain the children. Defendant is employed sporadically as a construction worker. The amount of court-ordered support is not only inadequate, but is vague and indefinite as to what occurs when defendant's unemployment insurance payments cease or drop below the level of $830.00 per month, or defendant obtains employment at other than $11.50 per hour. We, therefore, reverse the child support order and remand for a more definite award consistent with this opinion. In the interests of judicial economy and conservation of the parties' limited resources, the court order should anticipate future exigencies, as much as possible, in awarding alimony and support payments to avoid the necessity of future court appearances.

We find that the trial court abused its discretion in awarding child support and in dividing marital property. We, therefore, reverse and remand for further action consistent with this opinion.

BENCH and BILLINGS, JJ., concur.