**Charles Irvin HAGAN, Plaintiff, Appellant, and Cross–Appellee,**

v.

**Linda Marie HAGAN, Defendant, Appellee, and Cross–Appellant.**

**Nos. 900114–CA, 900127–CA.**

Court of Appeals of Utah.

April 17, 1991.

Laura L. Boyer (argued) and Mitchel Zager, Salt Lake City, for Charles Hagan.

George Searle (argued), Salt Lake City, for Linda Hagan.

Before BENCH, JACKSON and RUSSON, JJ.

## OPINION

RUSSON, Judge:

Plaintiff, Charles Irvin Hagan, and defendant, Linda Marie Hagan, both appeal from an order denying their separate peti-

tions to modify their divorce decree. We affirm.

## FACTS

Charles and Linda Hagan were married December 24, 1968. They separated in July 1974, and on February 24, 1976, Charles Hagan filed a complaint for divorce. He procured Linda Hagan's consent to default and obtained a default divorce on July 22, 1976.

The divorce decree awarded Charles Hagan fee title ownership to the residence at 3699 South 2300 East in Salt Lake City "subject to the right of the defendant [Linda Hagan] to reside in the said property so long as she desires." The decree contained no provision for alimony identified as such, but did require Charles Hagan "to pay all utilities incurred in the operation of the household." Linda Hagan was awarded custody of the two minor children and $100 per month child support for each child. At the time of the divorce, Charles Hagan's annual net income was $64,562. Linda Hagan had no income.

Subsequently, Linda Hagan received rental payments of $200 per month from tenants living in an apartment at the subject property. She also was subsequently employed by her father, who testified that he had no need for her services, but wanted to "give her some dignity."

In October 1987, Charles Hagan petitioned the trial court to modify the divorce decree, alleging that Linda Hagan's right to reside in the residence was the equivalent of child support, that the children were now living with him, that he had a new wife and baby, and that such constituted a substantial change in circumstances, requiring modification of the original decree.

In November 1987, Linda Hagan filed her own petition to modify, alleging that her expenses had increased, that Charles Hagan had ceased paying the utilities, and that the child support payments ceased when the two children moved in with their father, resulting in her need for increased spousal support. She alleged that such constituted a substantial change in circum-

stances requiring modification of the original decree.

These cases were consolidated by the trial court which, following a hearing, held that: (1) by way of property distribution in the original decree, Linda Hagan received a life estate in the subject property and Charles Hagan received fee title, subject to Linda Hagan's life estate, and such was not subject to modification; (2) Linda Hagan is entitled to receive the rental monies from the apartment; (3) Linda Hagan's father hired her only to "give her dignity"; (4) Linda Hagan is presently unemployable due to limited abilities; (5) Charles Hagan is not entitled to child support from Linda Hagan because she is unemployable; (6) Charles Hagan must pay utility payments for the subject property, including those past due; (7) there has been no substantial change in circumstances that would support a modification of the divorce decree; and (8) each party should pay its own attorney fees.

Charles Hagan claims that the trial court abused its discretion in: (1) finding that Linda Hagan's right to live in the marital home, as provided in the decree of divorce, was in the nature of a life estate received as part of the property division, instead of child support; (2) refusing to modify the aforementioned provision of the divorce decree; (3) awarding Linda Hagan rental monies received from a separate apartment on the premises; (4) ordering Charles Hagan to pay utilities on the subject property; (5) finding no substantial change in circumstances which would justify modification of the original divorce decree; (6) finding that Linda Hagan was unemployable, and that her termination from work was bona fide; and (7) failing to order her to pay child support for the period of time that she was employed by her father.

Linda Hagan claims abuse of discretion by the trial court as to: (1) finding no substantial change in circumstances which would justify modification of the original divorce decree increasing spousal support, and (2) denying her attorney fees.

The three central issues in this appeal concern the disposition of the marital home,

the court's determination of no change in circumstances sufficient to justify modification of the original divorce decree, and attorney fees.

## STANDARD OF REVIEW

We will not disturb the trial court's findings of fact in a divorce proceeding unless such findings are clearly erroneous. *Jense v. Jense,* 784 P.2d 1249, 1251 (Utah Ct.App. 1989) (citations omitted); *see also* Utah R.Civ.P. 52(a). On appeal, it is the burden of the party seeking to overturn the trial court's decision to "marshall the evidence in support of the findings and then demonstrate that despite this evidence, the trial court's findings are so lacking in support as to be 'against the clear weight of the evidence,' thus making them 'clearly erroneous.'" *In re Estate of Bartell,* 776 P.2d 885, 886 (Utah 1989) (quoting *State v. Walker,* 743 P.2d 191, 193 (Utah 1987)); *see also Riche v. Riche,* 784 P.2d 465, 468 (Utah Ct.App.1989). We will not disturb the trial court's decision as to modification of a divorce decree absent an abuse of discretion. *Myers v. Myers,* 768 P.2d 979, 984 (Utah Ct.App.1989) (citation omitted).

## I. MARITAL HOME

### A. Disposition as Property Division

■ The trial court found that Linda Hagan's right to reside in the marital home, as provided in the decree of divorce,[1] was in the nature of a property disposition, and, as such, was a life estate.[2] Clearly, the property in question was originally marital property. Charles Hagan's complaint for divorce alleged as much, which allegation became the following finding of fact:

6. The parties have acquired the following property during the marriage relationship:

A. *REAL PROPERTY*

A residence located at 3699 South 2300 East, Salt Lake City, Utah....

This marital property was distributed by the original divorce decree as follows:

4. [T]he real estate located at 3699 South 2300 East ... is to be in fee title ownership of the plaintiff, subject to the right of defendant to reside in said property so long as she desires. The plaintiff is to pay all utilities incurred in the operation of the household....

■ Taken together, these provisions indicate that the property in question was marital property and the division thereof was part of the property distribution at the time of divorce. Although the granting to one spouse the right to reside in the marital home is often justified as providing child or spousal support, even in those situations, the granting of that right is generally considered part of the property division. *See, e.g., Bushell v. Bushell,* 649 P.2d 85, 87 (Utah 1982); *Foulger v. Foulger,* 626 P.2d 412, 413 (Utah 1981); *Peterson v. Peterson,* 748 P.2d 593 (Utah Ct. App.1988). Therefore, the trial court was correct in finding that the said decree granted Linda Hagan a life estate and Charles Hagan fee title subject to her life estate.

### B. Refusal to Modify

■ A court maintains continuing jurisdiction to modify a divorce decree. *Whitehouse v. Whitehouse,* 790 P.2d 57, 61 (Utah Ct.App.1990) (citing *Beckstead v. Beckstead,* 663 P.2d 47, 48 (Utah 1983)). "However, a party requesting that a di-

---

1. This is a default divorce proceeding, in which Charles Hagan filed the original complaint, the findings of fact and conclusions of law, and the divorce decree. He also obtained Linda Hagan's written consent to the allegations and default. In such a proceeding, "[a] defaulting party should expect that the relief granted will not exceed or substantially differ from that sought in the complaint." *Holt v. Holt,* 672 P.2d 738, 741 (Utah 1983) (citations omitted). It is, therefore, abundantly equitable that he be strictly held to the provisions which he created.

2. The trial court found that Linda Hagan's life estate was subject to termination on either of two conditions: (1) her moving from the subject property, or (2) her remarriage. Neither condition had occurred at the time of appeal. The divorce decree further provided that upon termination of Linda Hagan's life estate, Charles Hagan must pay her $15,000, half of the parties' equity in the property at the time of divorce.

vorce decree be modified must demonstrate that there has been 'a substantial change of circumstances occurring since the entry of the decree and not contemplated in the decree itself.'" *Id.* (quoting *Naylor v. Naylor*, 700 P.2d 707, 710 (Utah 1985)).

Moreover, the extent of the change necessary to modify a divorce decree varies with the type of modification sought:

> Provisions dealing with alimony and child support are more susceptible to alteration at a later date because the needs that such provisions are intended to fulfill are subject to rapid and unpredictable change. Provisions relating to property, however, should be modified with great reluctance. In the interest of promoting stability in titles, modifications in a decree of divorce affecting the "disposition of real property are to be granted only upon a showing of *compelling* reasons arising from a substantial and material change in circumstances."

*Id.* (quoting *Foulger*, 626 P.2d at 414) (citations omitted) (emphasis in original). There is no evidence of compelling considerations requiring modification here. Therefore, the trial court's refusal to modify this property distribution was not an abuse of discretion, and we affirm.

### C. Rent Payments

■ It is axiomatic that a life estate includes present enjoyment, and that the life tenant is entitled to full use and enjoyment of the land and its profits during the life estate.[3] *Kanawha Banking & Trust Co. v. Alderson*, 129 W.Va. 510, 40 S.E.2d 881, 885 (1946); *Duffley v. McCaskey*, 345 Mo. 550, 134 S.W.2d 62, 64 (1939); *Lawley v. Richardson*, 101 Okl. 40, 223 P. 156, 157 (1924). Having affirmed the trial court's finding that Linda Hagan's right to live in the marital home was a life estate, her decision to rent out part of the property was within her right to full use and enjoyment of the property, and profits derived therefrom belong to her. Accordingly, we affirm the trial court's finding that rental

monies, past and present, belong to Linda Hagan.

### D. Utilities

■ The original findings of fact required Charles Hagan to pay "all utilities incurred at the residence of the parties at 3699 South 2300 East, Salt Lake City, Utah." Contrary to the trial court's conclusion that this provision was part of the property division, such provision must be construed as spousal support for Linda Hagan. Utah case law clearly states that regardless of label, a provision's true nature determines whether it is property, alimony, or child support. "It is not the label placed by decree upon payments which constitutes them either alimony or lump sum property settlements; it is the elements inherent in the case as a whole, the record of which the decree is a part, which determine to what category such payments belong." *Bott v. Bott*, 22 Utah 2d 368, 369, 453 P.2d 402 (1969) (quoting *Walters v. Walters*, 341 Ill.App. 561, 94 N.E.2d 726, 732 (1950), aff'd, 409 Ill. 298, 99 N.E.2d 342 (1951)); *see also Bair v. Bair*, 737 P.2d 177 (Utah 1987). In the case at bar, the utility payments are not for a fixed sum, nor are they for a fixed period. By the terms of the original divorce decree, Charles Hagan is required to continue to pay utilities at the subject property for as long as Linda Hagan lives there. Such is in the nature of continuing spousal support necessary as long as she resides there, and, therefore, must be considered alimony.

■ However, this conclusion does not require reversal of the trial court. We may affirm the trial court's ruling on any proper ground, even if such ground was not relied upon by the court below. *In re Estate of Hock*, 655 P.2d 1111, 1114 (Utah 1982) (citing *Peterson v. Peterson*, 645 P.2d 37 (Utah 1982)). The trial court found no substantial change in circumstances to justify modifying the divorce decree, and its decision is supported by the evidence. Therefore, even had the trial court properly

---

**3.** However, the life tenant may not permanently diminish the value of the future estate. *Duffley v. McCaskey*, 345 Mo. 550, 134 S.W.2d 62, 64 (1939); *Lawley v. Richardson*, 101 Okl. 40, 223 P. 156, 157 (1924).

construed the utility payments as alimony, its refusal to modify that provision of the divorce decree was, in any event, proper because of the absence of a substantial change in circumstances. Accordingly, we affirm the trial court's decision that Charles Hagan be required to continue utility payments at the subject property.

## II. SUBSTANTIAL CHANGE IN CIRCUMSTANCES

### A. Finding of "No Change"

■ It is well-settled in Utah that a party seeking modification of a divorce decree has the burden of showing a substantial change in circumstances. *Haslam v. Haslam*, 657 P.2d 757, 758 (Utah 1982) (citing *Adams v. Adams*, 593 P.2d 147 (Utah 1979)). It is insufficient to show that there has been some change, without a showing that such change was substantial. *Lord v. Shaw*, 682 P.2d 853, 856 (Utah 1984). In *Lord v. Shaw*, the court found that although "both parties [had] experienced changes that could increase or decrease their respective needs and incomes," the situation as a whole did not indicate a substantial change requiring modification of the divorce decree. *Id.* Similarly, in the case at bar, the trial court found that although some changes had occurred on behalf of both parties, the changes did not justify a modification.

■ At the time of the divorce, Charles Hagan's annual net income was $64,562, while Linda Hagan had no income. At the time of the hearing on the petition to modify, Charles Hagan's annual net income had decreased to $50,787, while Linda Hagan still had no income, except rental monies from the apartment of $200 per month. Also Linda Hagan was found to have limited abilities, and while not totally disabled, she was severely limited in the job market and therefore unemployable. Charles Hagan had remarried and had a new child. The trial court acknowledged these changes, but found them insufficient to modify the original divorce decree. On appeal, Charles Hagan has neither marshalled the evidence in support of the trial court's decision nor demonstrated that despite this evidence, the trial court's findings are so lacking in support as to be against the clear weight of the evidence, and, therefore, we affirm.

### B. Linda Hagan's Employability

■ Charles Hagan contends that the trial court abused its discretion in finding that Linda Hagan was unemployable and that her termination from work was bona fide. However, the trial court's findings are well supported by the evidence. The expert testimony of two psychologists revealed that Linda Hagan had limited abilities and was in need of specialized training before she would be able to hold a job. Also, reports from both psychologists revealed her intelligence to be in the low normal range of IQ functioning. On the basis of this evidence, the trial court found her unemployable. As to Linda Hagan's father giving her a job, his testimony makes it clear that he hired her only to "give her dignity," and that he was not in need of her services.[4] Additionally, there is no evidence to support the contention that her termination was not bona fide. Since the trial court's findings are not against the clear weight of the evidence, we affirm.

### C. Child Support

■ Charles Hagan also cites as error the trial court's failure to order Linda Hagan to pay past child support.[5] As to child support, "[w]e will not upset the trial court's apportionment of financial responsibilities in the absence of manifest injustice or inequity that indicates a clear abuse of discretion." *Maughan v. Maughan*, 770 P.2d 156, 161 (Utah Ct.App.1989) (citing *Hansen v. Hansen*, 736 P.2d 1055, 1056 (Utah Ct.App.1987)). Since the evidence supports the trial court's determination

---

**4.** In fact, Linda Hagan's father simply told her: "You just come when you want. Come on the days you want and on the hours you want. And when you get here, find something to do."

**5.** Only past child support is in issue because both children have now reached majority.

that Linda Hagan owed no child support, we find no manifest injustice in the trial court's refusal to order payment of such, and we affirm.

### III.  ATTORNEY FEES

The final issue concerns whether attorney fees were properly denied to Linda Hagan's attorney.  A party seeking attorney fees in a divorce action must present evidence which establishes the financial need of the requesting party and demonstrates the reasonableness of the amount of the award.  *Munns v. Munns,* 790 P.2d 116, 122 (Utah Ct.App.1990) (citations omitted).  However, the decision to grant or deny attorney fees is "within the trial court's sound discretion." *Id.* at 123. Since Linda Hagan failed to establish either of the above factors, it was not an abuse of discretion for the trial court to order each party to pay his or her own fees.  Accordingly, we affirm the trial court's ruling on this issue also.

We have reviewed the other issues raised here and find them to be without merit.

### CONCLUSION

In conclusion, we find that the trial court did not abuse its discretion in regards to any of the issues raised; therefore, we affirm the trial court's rulings as to all issues.

BENCH and JACKSON, JJ., concur.