**Helen Jayne WALTERS, Plaintiff and Appellee,**

v.

**Lewis Mark WALTERS, Defendant and Appellant.**

No. 890671–CA.

Court of Appeals of Utah.

May 14, 1991.

---

Robert L. Moody (argued), Taylor, Moody & Thorne, Provo, for defendant and appellant.

Thomas H. Means (argued), Provo, for plaintiff and appellee.

Before BENCH, JACKSON and ORME, JJ.

## OPINION

JACKSON, Judge:

Appellant, Lewis Mark Walters (Mark Walters), appeals from an amended decree of divorce awarding appellee, Helen Jane Walters (Helen Walters) a share of the parties' realty, a proportionate share of Mark Walters's retirement benefits, and attorney fees. Mark Walters challenges the decree on two grounds: (1) the trial court erred by establishing a marital relationship between the parties from January 1, 1980 until October 5, 1984, and (2) the trial court erred by awarding attorney fees where there was no evidence of financial need. Helen Walters raises the issue of Mark Walters's standing to bring this appeal.[1]

## FACTS

Helen Walters and Mark Walters met in late 1978. Helen Walters, was then, and at

---

1. Helen Walters argues that Mark Walters is without standing because, after trial and prior to this appeal, he transferred to third parties his interests in the real properties at issue. However, her challenge to Mark Walters's standing is premised upon alleged transactions which took place subsequent to the trial court's memorandum decision and which are not part of the trial record or the record on appeal. Hence, appellee's remedy, if any, regarding those transactions lies in the trial court.

all relevant times, employed at Geneva Steel. Mark Walters was employed by the United States Air Force and was frequently assigned temporary duty assignments out of state. When he would return to Utah for visits, Mark Walters lived with Helen Walters in her trailer. Mark Walters also maintained a habitable trailer on property (Parcel 1) he owned prior to meeting Helen Walters, in Highland, Utah. Parcel 1 had been purchased by Mark Walters in 1977 and he made final payment on it in 1981.

In addition to Parcel 1, Mark Walters owned a trailer pad at 625 South 50 West, Pleasant Grove, Utah (Parcel 2). This had been purchased in his name in 1980. Helen Walters's mobile trailer was moved to Parcel 2 in 1980. Mark Walters paid all the expenses incurred as result of that move. Helen Walters arranged for and participated in improvements to this property and Mark Walters paid for those improvements.

From 1978 through 1983, Helen Walters filed her separate tax returns under the name of Hunter. Her daughter, Shantel, from a previous marriage, resided with Helen and Mark Walters, and was enrolled in school under the last name of Walters. In addition Mark Walters contributed to Shantel's financial support. Mark Walters's 1982 through 1984 federal income tax returns listed Shantel as a dependent living with him. In 1984, the parties were ceremoniously married and they filed a joint income tax return. Prior to 1984, the parties maintained separate checking accounts.

In July 1985, Mark Walters purchased a third trailer pad located at 640 South 50 West in Pleasant Grove, Utah (Parcel 3). This property was in the same trailer park as Parcel 2. In October 1985, he moved his trailer from Parcel 1 in Highland, Utah, to Parcel 3.

On October 26, 1987, Helen Walters filed for divorce, and on February 7, 1989, the parties appeared before the trial court to terminate their marriage and divide their real and personal property. Following the trial, the court issued a memorandum decision finding "that the parties began to carry on a marriage-like relationship on or about January 1, 1980, which was several years before the marriage was actually solemnized." The court determined that Helen Walters was to receive Parcel 2 in Pleasant Grove where her mobile home was located. Mark Walters was to keep Parcels 1 and 3. Helen Walters was also awarded a portion of Mark Walters's retirement benefits to be calculated from January 1, 1980, using the formula set forth in *Marchant v. Marchant*, 743 P.2d 199, 205–06 (Utah Ct.App.1987). On July 31, 1989, in a second memorandum decision, the trial court awarded Helen Walters $1,000 for attorney fees "based on need and the relative ability of the parties to pay."

## STANDARD OF REVIEW

In divorce proceedings, the trial court has considerable discretion concerning property distribution. This court will not disturb the trial court's decision unless it is clearly unjust or a clear abuse of discretion. *Smith v. Smith*, 751 P.2d 1149, 1151 (Utah Ct.App.1988).

## PROPERTY DISTRIBUTION

In distributing the parties' property, the trial court found that they began to carry on a marriage-like relationship on or about January 1, 1980. In making this finding, the court considered a number of factors: (1) Mark Walters stayed in Helen Walters's trailer with her when he was not working out of state, (2) Mark Walters had Helen Walters's trailer moved onto a lot for which he was paying, and did not charge rent, (3) Helen Walters made improvements on the property such as would be expected of a married couple, (4) Mark Walters paid debts for the plaintiff including debts to the I.R.S. and the tax commission, and (5) while working out of state, Mark Walters sent Helen Walters money on which to live.

Mark Walters challenges the trial court's property distribution on grounds that the trial court erred in ruling that their marriage relationship began January 1, 1980, and in distributing the property according to that ruling. Helen Walters argues that

the trial court did not err, but rather used its broad discretion in distributing the parties' premarital and marital property.

"When a decree of divorce is entered, the court may include in it equitable orders relating to the children, property, and parties...." Utah Code Ann. § 30–3–5(1) (1989). The Utah Supreme Court has concluded that this statute confers "broad discretion upon trial courts in the division of property, regardless of its source or time of acquisition." *Burke v. Burke,* 733 P.2d 133, 134–35 (Utah 1987) (citations omitted). Further, "the purpose of property divisions is to allocate property in the manner which 'best serves the needs of the parties and best permits them to pursue their separate lives.'" *Noble v. Noble,* 761 P.2d 1369, 1373 (Utah 1988) (quoting *Burke* 733 P.2d at 135).

As a general rule, however, premarital property is viewed as separate property, and equity usually requires that "each party retain the separate property he or she brought into the marriage." *Haumont v. Haumont,* 793 P.2d 421, 424 (Utah Ct.App.1990). However, this rule is not invariable. "In fashioning an equitable property division, trial courts need consider all of the pertinent circumstances." *Burke,* 733 P.2d at 135. Factors generally considered are:

> the amount and kind of property to be divided; whether the property was acquired before or during the marriage; the source of the property; the health of the parties; the parties' standard of living, respective financial conditions, needs, and earning capacity; the duration of the marriage; the children of the marriage; the parties' ages at time of marriage and of divorce; what the parties gave up by the marriage; and the necessary relationship the property division has with the amount of alimony and child support to be awarded. Of particular concern ... is whether one spouse has made any contribution toward the growth of the separate assets of the

other spouse and whether the assets were accumulated or enhanced by the joint efforts of the parties.

*Id.* (Citations omitted). Thus, where unique circumstances exist, a trial court may reallocate premarital property as part of a property division incident to divorce. *Haumont,* 793 P.2d at 424–25. *See also Burt v. Burt,* 799 P.2d 1166, 1171 (Utah Ct.App.1990).

Implicit in this analysis is the requirement that the trial court, before exercising its discretionary power to distribute property, determine what property is premarital and what property is marital. To that end, the court must properly determine when the parties were lawfully married.

To permit appellate review of a trial court's property division, the lower court must have made adequate factual findings. *Haumont,* 793 P.2d at 425. The findings should be "'sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached.'" *Marchant v. Marchant,* 743 P.2d 199, 202–03 (Utah Ct.App.1987) (quoting *Acton v. Deliran,* 737 P.2d 996, 999 (Utah 1987)).

In the instant case, the findings are not altogether clear as to how the trial court determined what was premarital property and what was marital property. The court's analysis focused on various factors leading the court to conclude that the parties' marriage-like relationship began January 1, 1980. We disagree. Under Utah law, the Walters' relationship could not be treated as a marriage prior to its solemnization on October 5, 1984. "Before adoption of section 30–1–4.5 in 1987, Utah did not recognize an unsolemnized relationship as a marriage, even though the parties to the relationship may have acted in other respects as spouses." [2] *Layton v. Layton,* 777 P.2d 504, 505 (Utah Ct.App.1989) (citing *Mattes v. Olearain,* 759 P.2d 1177,

---

**2.** Section 30–1–4.5 recognizes a marriage relationship between cohabitants if the relationship satisfies certain specified requirements.

1181 (Utah Ct.App.1988)). Further, section 30-1-4.5 may not be applied retroactively. *Id.* at 505.

Therefore, we conclude as a matter of law that the Walters' marriage began on October 5, 1984, the date of its solemnization. Property acquired before that date is premarital property and property acquired after is marital property. Specifically, Parcels 1 and 2 are premarital properties and Parcel 3 is marital property. Further, any apportionment of Mark Walters's retirement benefits should be calculated by using the formula in *Marchant* and October 5, 1984 used as the date of the parties' marriage.[3]

Before a trial court can include either of the parties' premarital property in the marital estate, it must find unique circumstances that warrant disregarding the general rule that premarital property is separate property. *See Burke,* 733 P.2d at 135; *Haumont,* 793 P.2d at 424-25. Those findings must be sufficiently detailed to show how the court distributed the parties' property. *Marchant,* 743 P.2d at 202-03. In the case at bar, the only relevant unique circumstance discussed by the trial court was the fact that Helen Walters helped arrange for and make improvements to Parcels 1 and 2. The court did not consider any of the other factors generally considered by courts when equitably distributing property pursuant to a divorce. *See Burke,* 733 P.2d at 135; *Haumont,* 793 P.2d at 425. Further, the findings are insufficiently detailed to indicate how the trial court arrived at its decision.

Therefore, we remand to the trial court for further proceedings consistent with this decision, and to make sufficiently detailed findings to support that distribution. On remand, the trial court should "first prop-erly categorize the parties' property as part of the marital estate or as separate property of one or the other." *Burt,* 799 P.2d at 1172. As a starting point then, Mark Walters is entitled to all of Parcels 1 and 2, and a fifty percent interest in Parcel 3. Helen Walters is entitled to a fifty percent interest in Parcel 3. Following the analysis in *Burt,* "the court should then consider the existence of exceptional circumstances and, if any be shown, proceed to effect an equitable distribution in light of those circumstances...." *Id.*[4]

## ATTORNEY FEES

■ Under Utah Code Ann. § 30-3-3 (1989), a court may award attorney fees in a divorce proceeding. "In order to award attorney fees, the trial court must find the requesting party is in need of financial assistance and that the fees requested are reasonable." *Riche v. Riche,* 784 P.2d 465, 470 (Utah Ct.App.1989) (citations omitted).

The record contains evidence upon which to find that the attorney fees awarded were reasonable. Helen Walters's attorney testified regarding the amount and type of services rendered and submitted a supporting affidavit. However, the findings do not discuss the evidence upon which the trial court based Helen Walters's need for such fees. Moreover, upon reviewing the record, it is clear Helen Walters failed to demonstrate her need for an award of attorney fees. The trial court found that neither party was presently in need of financial support from the other. This finding suggests that Helen Walters is not in need of long-term financial assistance. Further, the record does not reveal that she has any need of short-term financial assistance. Therefore, we reverse the trial court's award of attorney fees.

---

**3.** It is unclear why the court awarded Helen Walters any interest in Mark Walters's retirement benefits while awarding him no interest in her benefits. Ordinarily, the court should either award each spouse his or her own benefits, or award each a fifty percent interest in the benefits of the other, insofar as accumulated during the marriage. *See, e.g., Burt,* 799 P.2d at 1170. However, here Mark Walters's appeal of this issue is limited to arguing that the trial court used the wrong date in calculating Helen Walters's interest in his benefits. No argument was made that Helen Walters was entitled to no interest in Mark Walters's retirement benefits, nor that he was entitled to a corresponding interest in her benefits.

**4.** For example, since Helen Walters's trailer sits on Parcel 2, Mark Walters's separate property, the court may decide to treat that parcel as marital property, and Parcel 3, otherwise marital property, as Mark Walters's separate property, assuming the two properties are of comparable value.

Helen Walters also seeks an award of attorney fees on appeal. She first asks this court to award attorney fees pursuant to Utah R.App.P. 33(a) on the ground that this is a frivolous appeal. Obviously it is not, since appellant prevailed.

Helen Walters also seeks an award of her attorney fees incurred in this appeal pursuant to section 30–3–3. This court has previously awarded attorney fees on appeal under section 30–3–3. *Maughan v. Maughan*, 770 P.2d 156, 163 (Utah Ct.App. 1989). However, as we have already discussed, in awarding attorney fees under section 30–3–3, both the need for, and the reasonableness of, an award of attorney fees must first be determined. *Riche*, 784 P.2d at 470. Helen Walters has not demonstrated a need for an award of attorney fees below. Further, we see no new circumstances warranting an award of attorney fees in this appeal. Therefore, we decline to award attorney fees on appeal.

## CONCLUSION

In summary, we reverse and remand the trial court's distribution of the parties' property, and reverse the trial court's award of attorney fees. We decline to award fees on appeal.

BENCH and ORME, JJ., concur.