Sandra J. **ALLRED**, Plaintiff
and Appellant,

v.

Robert G. **ALLRED**, Defendant
and Appellee.

No. 910030–CA.

Court of Appeals of Utah.

June 5, 1992.

David S. Dolowitz and M. Joy Douglas, Salt Lake City, for plaintiff and appellant.

J. Franklin Allred, Salt Lake City, for defendant and appellee.

Before GARFF, JACKSON and ORME, JJ.

GARFF, Judge:

Appellant Sandra J. Allred (Wife) appeals a divorce decree and judgment awarding appellee Robert G. Allred (Husband) the tax exemption for the parties' minor child. Husband cross appeals claiming the trial judge erred in setting aside and amending its initial findings of fact and conclusions of law, and in computing the final property distribution. We affirm in part, reverse in part, and remand.

## FACTS

Wife and Husband were married September 17, 1977. The parties have one minor child. Husband has a monthly income of $6,016. Wife intends to continue her education following the divorce. Her income consists of alimony and child support payments.

The trial court issued a memorandum decision on August 9, 1990, outlining a specific division of the parties' property, awarding custody of the minor child to Wife, setting the amount of child support at $610 per month in accord with the Utah Child Support Guidelines, awarding Wife alimony in the amount of $1,000 per month, and resolving other issues not relevant to this appeal. The memorandum decision did not specify a visitation schedule, nor did it award the tax exemption for the minor child to Husband. The trial court directed Husband's attorney to prepare the findings of fact and conclusions of law (initial decree).

The initial decree awarded Husband the tax exemption for the minor child, a liberal visitation schedule, and a property division different from the one outlined in the memorandum decision. The "new" property division reflected a $14,000 net loss to Wife. On September 7, 1990, Husband's attorney sent the initial decree to the court and to Wife's attorney with a letter offering to discuss the provisions. Husband's attorney warned Wife's attorney that if he did not timely respond, he would present the initial decree to the trial court for final entry.

Wife's attorney sent a letter to the court on September 13, 1990, requesting additional time to review the initial decree and asking that the court postpone signing it. A copy of the letter was sent to Husband's attorney. Nonetheless, Husband's attorney presented the initial decree to the court for final entry on September 24, 1990. The trial court signed the initial decree on that date.

In the meantime, Wife's attorney prepared a letter accepting Husband's attorney's invitation to negotiate the items contained in the initial decree. Wife's attorney prepared the letter on September 24, 1990, and sent it to Husband's attorney on September 27, 1990, after the court had already signed the initial decree.

Wife filed a document captioned "Motion to Set Aside Entry of Judgment and Request for Extension of Time" (Motion to Set Aside), together with supporting memoranda and a request for decision, on September 27, 1990. The court granted Wife's motion by minute entry on October 19, 1990. On November 13, 1990, the court entered an "Order Setting Aside Findings of Fact, Conclusions of Law and Decree of Divorce," agreeing to hear oral argument on the property division and visitation issues, but expressly refusing to consider the tax exemption issue.

At the hearing on November 17, 1990, Husband argued that the property division in the memorandum decision contained a mathematical error and therefore did not reflect the trial court's intention. The "new" property division outlined in the initial decree, he argued, was consistent with the court's intention and should be adopted. Finding it had made no mistake in calculation, the trial court rejected Husband's argument, and affirmed its original position outlined in the memorandum decision. The trial court also modified the visitation schedule.

The trial court entered its "Order Modifying Decree of Divorce and Ruling on Plaintiff's Request to Amend the Findings of Fact, Conclusions and Decree of Divorce" (final decree) on December 12, 1990.

On January 11, 1991, within thirty days of the signing of the final decree, Wife filed a notice of appeal with this court, claiming the court erred in awarding the tax exemption to Husband.

Husband claims Wife's appeal was not timely filed, and also cross-appeals claiming the court erred (1) in setting aside the initial decree because Wife's objections were not timely filed, and (2) in not recognizing that it had made a mistake in computing the final property distribution.

## TIMELINESS

■ We first consider whether Wife timely filed her notice of appeal so as to give this court jurisdiction. "[T]he initial inquiry of any court should always be to determine whether the requested action is within its jurisdiction." *Varian–Eimac, Inc. v. Lamoreaux*, 767 P.2d 569, 570 (Utah App.1989). We independently determine whether the appeal is proper when reviewing a jurisdictional issue. *See Barlow v. Cappo*, 821 P.2d 465, 466 (Utah App.1991).

Husband claims Wife did not timely file her appeal because she did not file a notice of appeal within thirty days of the court's signing of the initial decree on September 24, 1990. He further asserts that Wife's Motion to Set Aside was actually a Rule 60 motion because of its caption and because it requested relief from judgment, and therefore the motion did not toll the time to file notice of appeal. *See White v. State of Utah and the Dep't of Fin. Insts.*, 795 P.2d 648, 649 (1990) (Rule 60 motion does not toll time for appeal).

■ We determine the nature of a motion from the document's substance and not its caption. *Gallardo v. Bolinder*, 800 P.2d 816, 817 (Utah 1990) (per curiam). The trial court's implicit conclusion that Wife's motion was filed pursuant to Rule 59 is legal in nature; we thus accord it no particular deference and review for correctness. *Grayson Roper Ltd. Partnership v. Finlinson*, 782 P.2d 467, 470 (Utah 1989).

"[A] motion filed within ten days of the entry of judgment that questions the correctness of the court's findings and conclusions is properly treated as a post-judgment motion under either Rules 52(b) or 59(e)." *DeBry v. Fidelity Nat'l Title Ins. Co.*, 828 P.2d 520, 521 (Utah App.1992).

We conclude the trial court properly characterized Wife's motion as a Rule 59 motion based on its substance. A timely motion filed pursuant to Rule 59 tolls the time for appeal pending resolution of the motion. Utah R.App.P. 4(b).

Wife's motion in effect objected to several provisions of the initial decree because they did not reflect the decision made by the trial court in its memorandum decision. The court ultimately amended portions of the decree in its final order on December 12, and granted relief pursuant to Rule 59. Moreover, in making its final decree, the trial court granted Wife's "Request to Amend the Findings of Fact, Conclusions and Decree of Divorce," thus treating Wife's Motion to Set Aside as a Rule 59 motion to amend.

While the initial decree was final upon signing on September 24, 1990, the trial court granted Wife's motion on October 19, 1990, and amended the initial decree on December 12, 1990. Thus, the decree of divorce was not final until December 12, 1990. Because Wife filed her notice of appeal on January 11, 1991, within the thirty-day period, her appeal is therefore timely.

Having concluded that the court correctly characterized Wife's motion as a Rule 59 motion, we next consider whether the court properly granted relief pursuant to that Rule. As we discussed previously, the initial decree did not reflect the findings made by the court in the memorandum decision. Thus the court properly granted Wife's motion for relief pursuant to Rule 59.

## TAX DEPENDENCY EXEMPTION

Wife claims the court erroneously awarded the tax dependency exemption either as an error in law or through inadvertence. We agree.

To consider whether the court properly awarded the exemption, we rely on *Motes v. Motes*, 786 P.2d 232 (Utah App.1989). To permit appropriate appellate review of a trial court's application of the law, the trial court must have made adequate factual findings. *Walters v. Walters*, 812 P.2d 64, 67 (Utah App.1991). The "findings 'should be sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached.'" *Marchant v. Marchant*, 743 P.2d 199, 202–03 (Utah App. 1987) (quoting *Acton v. Deliran*, 737 P.2d 996, 999 (Utah 1987)). "Indeed, it would be an abuse of discretion for a divorce court to order a custodial parent to sign the [tax-

exemption waiver] in the absence of appropriately supported findings to that effect." *Motes*, 786 P.2d at 239.

The trial court awarded the exemption for the parties' minor child to Husband in the initial decree finding that "the value of his exemption for tax purposes would be totally lost unless Defendant is entitled to claim [the child] as his exemption for State and Federal income tax purposes." The trial court, however, never considered arguments regarding that award, nor did it make sufficient findings as required by *Motes*. Rather, Husband's attorney independently inserted the award in the initial decree, and the trial court refused to reconsider the award following Wife's Motion to Set Aside.

■ The Federal Tax Code presumes the custodial parent should receive the dependency exemption. 26 U.S.C. § 152(e) (1988). The custodial parent may waive the exemption by signing "a written declaration ... that such custodial parent will not claim such child as a dependent." 26 U.S.C. § 152(e)(2)(A). Utah courts have recognized that in some cases it may be in the best interest of the child for the custodial parent to waive the tax exemption in favor of the noncustodial parent. *Motes*, 786 P.2d at 239. In such cases, the court may order the custodial parent to sign a declaration of waiver consistent with Section 152 of the Tax Code. *Id.*

*Motes* recognizes the presumption created by federal tax law that the custodial parent receive the exemption and outlines those circumstances where the presumption can be rebutted:

> use of the power to order a custodial parent to execute a section 152 declaration should not be used to evenly or otherwise divide the available exemptions without regard to the particular economic realities. On the contrary, it should be

limited to those situations where the noncustodial parent has the higher income and provides the majority of support for the child or children whose exemption is claimed—support at a level which can be increased as a result of a reduction in his or her tax burdens. Indeed, it would be an abuse of discretion for a divorce court to order a custodial parent to sign the declaration in the absence of appropriately supported findings to that effect or demonstrating other exceptional circumstances making it in the best interest of the parties and their children that the declarations be signed.

*Id.* In short, the requirements are twofold. First, the noncustodial parent must have a higher income and provide the majority of support for the child. Second, the trial court must, from its findings, determine that by transferring the dependency exemption to the noncustodial parent, it is not only in the best interest of the parties, but, more importantly, also in the best interest of the child, which in all but exceptional circumstances would translate into an increased support level for the child.

The trial court must specify in its findings the reasons the exemption is given to the noncustodial parent, in accordance with *Motes*.

■ From the findings, it is apparent the trial court did not consider either of these requirements.[1] By failing to apply both *Motes* requirements, the court erred as a matter of law. We therefore reverse the award of the exemption to Husband and remand for an award consistent with the standards outlined in *Motes*.

## PROPERTY DIVISION

■ Husband, on cross appeal, claims the trial court erred in calculating the property division, causing an award to be en-

---

1. The decree awards Wife $1,000 per month alimony. This alimony is taxable income. 26 U.S.C. § 61(a)(8) (1988). Therefore, Wife has a taxable income of $12,000 per year for purposes of considering whether she should be required to sign the declaration waiving the exemption. The trial court, in its Finding of Fact Number 47, based on Husband's gross income, set child

support at $610 per month in accord with the Utah Child Support Guidelines. Utah Code Ann. § 78–45–1 (Supp.1991). The court failed to consider whether the best interests of the child required an increase in child support to reflect the reduction in the tax burden of Husband.

tered contrary to its intent. We reverse a finding only if we determine that it is not based upon substantial evidence or if it is clearly erroneous. *Hagan v. Hagan,* 810 P.2d 478, 481 (Utah App.1991) (citing *Jense v. Jense,* 784 P.2d 1249, 1251 (Utah App. 1989)); Utah R.Civ.P. 52(a). "The party seeking to overturn the trial court's findings has the burden of marshalling the evidence in support of the findings and then demonstrating that, despite such evidence, the findings are so lacking in support as to be against the clear weight of the evidence and, therefore, clearly erroneous." *Crouse v. Crouse,* 817 P.2d 836, 838 (Utah App.1991) (citing *Hagan,* 810 P.2d at 481). "If the appellant fails to marshal the evidence, the appellate court assumes that the record supports the findings of the trial court and proceeds to a review of the accuracy of the lower court's conclusions of law and the application of that law in the case." *Saunders v. Sharp,* 806 P.2d 198, 199 (Utah 1991) (per curiam) (citations omitted).

■ Husband does not allege that the trial court misapplied the law. Rather, he claims the trial court made a mathematical mistake in dividing the property.

The trial court, however, already had the opportunity to correct any mathematical mistake alleged by Husband. After granting Wife's Motion to Set Aside, the trial court considered arguments regarding the property division. Husband argued that the property division outlined in the initial decree better reflected the intent of the court than did the property division contained in the court's Memorandum Decision because the former corrected a mathematical mistake made by the trial court. The trial court reinstated the original decision, finding it had made no mistake in calculation or intent.

Moreover, Husband has failed to marshal the evidence in favor of the court's findings and to show how the marshaled evidence is legally insufficient to support the disputed finding. Instead, he reargues the facts supporting his position. Where the evidence in support of a disputed finding has not been marshaled, we refuse to second guess the decision of the trial court, partic-

ularly concerning property divisions where a trial court has considerable discretion. *Walters v. Walters,* 812 P.2d 64, 66 (Utah App.1991).

We affirm the findings regarding the property division because Husband has failed to marshal the evidence and because substantial evidence supports the findings.

## ATTORNEY FEES

■ A party in a divorce appeal, in need of financial assistance, may be awarded attorney fees incurred in having to pursue an appeal. *Osguthorpe v. Osguthorpe,* 791 P.2d 895, 895–96 (Utah App.1990) (per curiam). The trial court found that Wife was in need of financial assistance to pay her attorney fees. Moreover, Husband's attempt to acquire the tax exemption award without a proper hearing necessitated the present appeal. Therefore, we award Wife attorney fees incurred on this appeal, the amount to be determined by the trial court on remand.

## CONCLUSION

The trial court did not err in granting Wife's Rule 59 motion, which tolled the time for filing notice of appeal. Thus, Wife's notice of appeal was timely filed.

The court's award of the tax exemption to Husband was error because it did not apply the *Motes* test. We therefore reverse the award of the tax dependency exemption and remand for consideration consistent with this opinion and the requirements in *Motes.*

The trial court's property division is supported by substantial evidence and accurately reflects the Memorandum Decision. We therefore affirm the property division.

Affirmed in part, reversed in part, and remanded.

JACKSON, J., concurs.

ORME, Judge (concurring in the result in part):

While I otherwise concur in the court's decision, I take a somewhat different view of the tax exemption issue. I agree with

the majority's decision to remand for more detailed findings in accordance with the discussion in *Motes v. Motes*, 786 P.2d 232 (Utah App.1989). I write separately, however, to express concern that the majority has taken an overly restrictive interpretation of the *Motes* opinion.

The primary issue addressed in *Motes* was whether a state divorce court has the authority to award the tax exemption for supported children to the noncustodial parent. *Id.* at 235–40. After concluding that a state court does have this authority, we went on to outline considerations for courts awarding these exemptions, and made essentially two points. First, the tax exemption should not be awarded to the noncustodial parent without regard to the economic realities of the particular case. *Id.* at 239. Rather, such an award should ordinarily be limited "to those situations where the noncustodial parent has the higher income and provides the majority of support for the child." *Id.* Second, the award of the exemption should be supported by findings to that effect, or by findings that enumerate other exceptional circumstances so that awarding the exemption to the noncustodial parent is in the best interests of the parties and the children. *Id.* In my view, this is the lesson of *Motes:* the award of the tax exemption for dependents should be based on economic realities and it should be supported by adequate findings.

It bears mention that the trial in *Motes* preceded the effective date of Utah's statutory child support guidelines, *see* Utah Code Ann. §§ 78–45–1, –13 (1992), and thus some of the discussion in *Motes* is not directly applicable to the post-guideline context. Specifically, before the adoption of the guidelines, setting child support was a much more case-specific exercise, and the question of which parent would get the tax exemptions was among the myriad of factors to be considered in arriving at the right figure. With the guidelines, the Legislature has fixed what it considers appropriate child support figures at particular income levels, apparently without regard to who enjoys the tax benefit of dependency exemptions.

The guidelines specify the appropriate total child support based on the parents' combined monthly adjusted gross income, *see id.* § 78–45–7.14, and divide this total obligation between the parents in proportion to their respective incomes. *See id.* § 78–45–7.7. The guidelines as I read them do not mandate any particular adjustment to reflect the fact that one party has the economic benefit of the tax exemption for the supported children. The guidelines are rebuttable, however, and child support may be adjusted after considering factors relevant to the parents' respective economic situations. *Id.* § 78–45–7(3). Thus, it may be appropriate in some cases that a trial court, having decided which parent should be awarded the tax exemption for dependents, would consider increasing the support obligation of that parent.

But to make such an upward adjustment mandatory, as the majority all but does, goes further than the Legislature has seen fit to require. It also reflects an overly rigid interpretation of *Motes* without taking into account the subsequent enactment of legislatively-mandated guidelines. Thus, it might be that, in a particular case, the economic burdens of a noncustodial parent would permit a child support award *at* the guideline level, without adjustment *downward*, only if that parent had the benefit of the tax exemptions. Where appropriate findings were made to that effect, I would regard it a sufficient justification to award the exemptions to that parent. It may even be enough that the custodial parent's income is too low to make any real use of the exemptions while the noncustodial parent will benefit materially from having the opportunity to utilize the exemptions. Where the court's findings so establish, giving the exemptions to the noncustodial parent would be unobjectionable, even if not accompanied by some increase in child support, if the court found support at the level prescribed by the Legislature to be entirely adequate.

In conclusion, I agree that under *Motes* we need adequate findings to ascertain whether there is a sound reason for shifting the tax exemptions for dependent children to the noncustodial parent. I disagree

only with the majority's effort to narrowly limit the circumstances which would constitute such a sound reason.