John Franklin ALLRED, Plaintiff and Appellant,

v.

Gaydi S. ALLRED, Defendant and Appellee.

No. 890335–CA.

Court of Appeals of Utah.

Aug. 13, 1990.

Randall Gaither (argued), Salt Lake City, for plaintiff and appellant.

Vicki Rinne (argued), Highland, for defendant and appellee.

Before DAVIDSON, BENCH and ORME, JJ.

## OPINION

ORME, Judge:

Appellant, John Franklin Allred, appeals from an order which requires his former wife, Gaydi S. Allred, to pay $100 per month in child support, with those payments to be deposited into an interest-bearing account earmarked for their child's college education and disbursable only on the further order of the court. He argues that the trial court abused its discretion in failing to make adequate findings of fact, in setting the level of child support at a level below Ms. Allred's ability to pay, and in ordering that the support payments be placed beyond his reach. We reverse and remand.

## FACTS

The parties were divorced in 1981. For nearly five years, Ms. Allred had custody of the parties' three minor children, Aaryn, Derek, and Corey. Mr. Allred's monthly court ordered child support was $350 per child.

In January 1986, the parties stipulated to give custody of Derek to Mr. Allred and to cease Mr. Allred's $350 payment for Derek's support. Moreover, Ms. Allred agreed

to "pay" Mr. Allred $100 monthly for the support of Derek. As a convenience, the parties stipulated that her monthly payment be made in the form of a credit against what Mr. Allred was required to pay, and thereafter he accordingly paid Ms. Allred $600 per month toward the support of the two children still in her custody.

In late 1987, Corey also began living with Mr. Allred. On January 19, 1988, Mr. Allred filed a petition for modification of the divorce decree requesting a formal change of custody for Corey and seeking child support. Mr. Allred was awarded custody of Corey on October 7, 1988. On December 21, 1988, a hearing was held to decide the issues of child support, insurance, and medical expenses for Corey.

The trial court made several findings. Findings concerning Ms. Allred were that 1) she earned an annual salary of $29,000; 2) Aaryn having reached her majority, Ms. Allred has no minor children in her custody dependent on her for support; and 3) she is unable to provide medical coverage for her children on the insurance policy provided by her employer. The court found that Mr. Allred 1) earned $80,000 in 1986, $52,000 in 1987, and $80,000 in 1988; 2) has experienced a reduction in his law practice during the past three years, and it is unlikely that his income in the future will equal or exceed his income for the preceding three years; 3) has two minor children in his custody dependent on him for support; and 4) purchases health and accident insurance for himself and the two children at a price of $104 per month. The court also found that, under the advisory child support guidelines then contained in the Utah Code of Judicial Administration, the total support amount recommended for Corey would be "$937.99 of which $255 was allocable to [Ms. Allred] with $683.00 allocable to [Mr. Allred]." The court declined to embrace the guideline recommendation, but also failed to find what was actually needed for Corey's support, either to assure him a level of support equal to what he would have received had there been no divorce or in terms of what would be appropriate given his present circumstances.

The court's pertinent conclusions were as follows:

1. The defendant is entitled to child support from plaintiff for the minor child Corey Allred.

2. The court elects not to apply the support amount derived from the child support guidelines.

3. Plaintiff should pay to defendant the sum of $100.00 per month ... for the minor child Corey Allred until such time as the minor child Corey Allred obtains the age of 18 years and completes high school.

. . . .

5. The defendant shall be solely responsible for the maintenance of insurance for the minor children and solely responsible for all costs of medical and dental care not covered by such insurance.

In its findings and conclusions, the court did not explain why it elected not to apply the support guidelines or what factors prompted it to set an award significantly below that suggested by the guidelines.

In a subsequent hearing, the court ordered that Ms. Allred pay the child support into an interest-bearing account in Corey's name, rather than having it paid to Mr. Allred for the on-going support needs of Corey. In support of this order, the court made the following findings: 1) Mr. Allred had previously been given a similar opportunity to satisfy a $1000 judgment for back child support by placing the money in interest-bearing accounts for the children; 2) it would be a good thing for Corey to have the opportunity to attend college; 3) it would be more palatable for Ms. Allred than would be paying the money directly to Mr. Allred; and 4) Mr. Allred did not actually need the money to support Corey. In the latter regard, the court remarked: "I think [Ms. Allred] is right. You know, you can support these children okay. The $100.00 a month isn't going to make the difference between them having shoes and not having shoes."

On appeal, Mr. Allred argues that the trial court failed to make adequate findings of fact to justify the amount of child sup-

port to be contributed by Ms. Allred. He also argues that the court erred in ordering that the support be paid into an interest bearing account earmarked for Corey's college education. We reverse and remand for reconsideration of the support award and for the entry of adequate findings supporting an appropriate award.

## STANDARD OF REVIEW

Ordinarily, we accord the trial court considerable discretion in adjusting the financial interests of divorced parties and, thus, the court's "actions are entitled to a presumption of validity." *Hansen v. Hansen,* 736 P.2d 1055, 1056 (Utah Ct.App. 1987). However, where the court has abused its discretion in apportioning those financial responsibilities, we cannot affirm that determination. *Id. See also Ostler v. Ostler,* 789 P.2d 713, 715 (Utah Ct.App. 1990). One such abuse we have recognized in this area of the law is the failure to enter specific, detailed findings supporting each of the factors which must be considered when making a child support award. *Stevens v. Stevens,* 754 P.2d 952, 958–59 (Utah Ct.App.1988); *Jefferies v. Jefferies,* 752 P.2d 909, 911–12 (Utah Ct.App. 1988). With this standard in mind, we analyze the adequacy of the court's findings in this case.

## ADEQUACY OF TRIAL COURT'S FINDINGS

At the time of this dispute, the Utah Code provided, with our emphasis, that upon a material change in the circumstances of a divorced couple, such as the change in Corey's custody in this case,

the court, in determining the amount of prospective support, *shall* consider *all* relevant factors including but not limited to:

(a) the standard of living and situation of the parties;

(b) the relative wealth and income of the parties;

(c) the ability of the obligor to earn;

(d) the ability of the obligee to earn;

(e) the need of the obligee;

(f) the age of the parties;

(g) the responsibility of the obligor for the support of others.

Utah Code Ann. § 78–45–7(2) (1987).[1] This court has recognized that "[s]ection 78–45–7 *requires* the trial court to consider *at least* the seven factors listed ... [and to] enter findings on *all* of the factors." *Jefferies,* 752 P.2d at 911 (emphasis added). When the court fails to enter adequate findings on each relevant factor, it is reversible error unless the undisputed evidence clearly establishes the factor or factors on which findings are missing. *Ostler,* 789 P.2d at 715. Findings are adequate only if they are "sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached." *Stevens v. Stevens,* 754 P.2d 952, 958 (Utah Ct.App.1988) (quoting *Acton v. Deliran,* 737 P.2d 996, 999 (Utah 1987)).

Although the court in this case entered findings on some of the factors listed in § 78–45–7(2), the findings as a whole are insufficient, especially since they omit any finding on the critical question of the total amount needed for Corey's monthly support, other than to reject what the advisory guidelines would suggest. Moreover, the findings do not indicate how the court reached its ultimate determination of $100 per month—a figure which has no discernible basis in the evidence other than it was the figure the parties previously *stipulated* could be paid for Derek's support when his custody shifted to Mr. Allred.

The $100 award in this case may reflect the court's erroneous view of how to fix child support in the instant context. At one point in the trial, the court had the following exchange with the parties:

1. We quote the statute as it existed when this case was decided. It has subsequently been amended, principally to take into consideration the existence of new statutory child support guidelines and the relationship of the factors to those guidelines, and to expand subsection (e) to include the needs of the obligor and the child as well as those of the obligee. *See* Utah Code Ann. § 78–45–7(3) (1990).

Ms. Allred:.... But my question is, if I was able to raise three children on $33,-000 a year, I question why John is asking me for child support to raise two on eighty. That's all I have to say.

The Court: All right, Mr. Allred, she is probably right....

Later, the court stated to Mr. Allred: "I think ... that she should pay something for the support of the child, although your income is greater than hers. I am going to order that she pay the $100 a month...."

Finally, as noted earlier, at the second hearing, the court justified placement of the funds into a trust account by stating:

You know, you can support those children okay. The $100 a month isn't going to make the difference between them having shoes and not having shoes.... I am going to give the child an opportunity to have a little money to go to college, and it would be a good thing for him.

Each of these statements appears to reflect the view that because Mr. Allred's salary was sufficient to support the children, any amount from Ms. Allred need only be a token gesture.[2] The law does not support this position.

The trend of the law today is "toward equal rights and responsibilities for women ... requiring that the wife contribute child support if she is financially able in an amount approximately proportional to her financial ability." *Propriety of Decree in*

*Proceeding Between Divorced Parents to Determine Mother's Duty to Pay Support for Children in Custody of Father*, 98 A.L.R.3d 1146, 1150 (1980). Although apparently never addressing this precise issue before, Utah appellate courts have recognized that "both parents have an obligation to support their children." *Woodward v. Woodward*, 709 P.2d 393, 394 (Utah 1985) (per curiam). This notion of equal responsibility is also apparent as a matter of statutory law in Utah.[3]

Because the court's findings were not adequate to support its award and appear to have been tainted by its erroneous view of the extent to which Ms. Allred should be expected to contribute to Corey's support, we must remand for reconsideration of the support award and for the entry of adequate findings supporting an appropriate award.

We do not intend our remand to be merely an exercise in bolstering and supporting the conclusion already reached. Although we cannot decide from the record before us that $100 is an inadequate award as a matter of law, we "note the apparent inadequacy in the amount of the child support award." *Ostler*, 789 P.2d at 715. One hundred dollars is well below the amount suggested by either the advisory support guidelines in effect at the time of the trial or the subsequently enacted statutory guidelines now in effect.[4] *See* Utah Code

2. The court's order placing the money into a kind of trust account for college is itself indicative of the court's erroneous view concerning child support. Child support should be used to "assure the children a standard of living comparable to that which they would have experienced if no divorce had occurred," *Ostler*, 789 P.2d at 716, not to assure that the child will have money in the future, even for such worthy pursuits like a college education.

3. Utah statutes draw no distinction in terms of support duty between custodial and non-custodial parents nor between fathers and mothers. The duty of both is the same: "Every man shall support his child....," Utah Code Ann. § 78–45–3 (1987); "Every woman shall support her child...." Utah Code Ann. § 78–45–4 (1987).

4. As recognized by the court in its findings and conclusions, the advisory support guidelines

would have imposed a support obligation on Ms. Allred of approximately $255. Utah Code of Judicial Admin. app. H (1988). An award under the statutory guidelines now in effect would be approximately $210. Utah Code Ann. §§ 78–45–7.7, –7.14 (1990). However, the level of support fixed in this case is additionally skewed against Mr. Allred by the fact that 100% of one aspect of Corey's support, namely medical expenses, was to be borne exclusively by Mr. Allred. It may well be prudent to require Mr. Allred to continue to pay medical insurance premiums on behalf of Corey, so long as those amounts are properly credited as part of the support Mr. Allred is contributing. But the deductible, co-payment, and other out-of-pocket medical expenditures should either be built into the court's calculation of Corey's monthly total support need and shared proportionally in that way, or those expenses should be defrayed by the parties on a proportional basis as they are incurred.

Ann. § 78–45–7.2(1)(a) (1990). Even when not directly applicable, support guidelines may be relevant in considering the adequacy of an award. *See Ostler*, 789 P.2d at 715–16 (noting Utah's current guidelines); *Martinez v. Martinez*, 754 P.2d 69, 73 (Utah Ct.App.1988) (noting guidelines from other jurisdictions).

On remand, the trial court should employ a systematic approach, tailored to this situation where both parents are gainfully employed, which will insure a proper outcome. While this approach has not been clearly enunciated in any prior child support decision, it is consistent with those decisions. It does not ignore the statutorily-mandated factors to be considered, but merely accords them a sensible priority. It is an approach which now enjoys statutory sanction, *see* note 8, *infra*, although it would be appropriate even without this legislative endorsement. First, the trial court must find the amount of total support needed for the child. *Jefferies*, 752 P.2d at 911. That figure should ideally "assure the children a standard of living comparable to that which they would have experienced if no divorce had occurred." [5] *Ostler*, 789 P.2d at 716 (quoting *Peterson v. Peterson*, 748 P.2d 593, 596 (Utah Ct.App.1988)). Once the total cost of support is ascertained, the trial court can determine through a fairly simple mathematical operation each parent's proportional share of that support with reference to each parent's share of their combined income.[6] Other things being equal, the amounts determined through the use of this formula will be the amounts each parent must contribute. However, the court may go on to consider other appropriate factors, including those listed in § 78–45–7(2), and adjust these amounts as needed if unusual circumstances exist.[7] Unusual circumstances prompting some adjustment of the respective support figures must be adequately supported by detailed findings.[8]

**5.** The advisory guidelines apparently suggested a total support amount for Corey of $937.99. The court did not indicate in its findings whether this amount would provide the standard of living Corey might have assuming no divorce nor did it find what would constitute that amount nor the amount needed to support him under his present circumstances.

**6.** The child support worksheet completed by Mr. Allred for the support hearing suggested that Ms. Allred's proportionate share of Corey's support, based upon their combined income, would be approximately 27%.

**7.** The findings currently before this court do not establish any unusual circumstances applicable to either party which suggest that Ms. Allred's support payments should be increased or decreased beyond her proportional share. Persuasive reasons for adjustment may include, among other things, a party's significant accumulated wealth over and above his or her salary, an extraordinary debt burden incurred for non-discretionary items, medical problems requiring exceptional on-going expense, a history of "below scale" support levels during the time when the parent now having custody and seeking support from the other parent had been the parent paying support, or competing demands on his or her income in the form of support for other dependents.

**8.** The orderly scheme just outlined has now been statutorily adopted. Calculation of the parent's support obligation is defined in Utah Code Ann. § 78–45–7.7 (1990), which provides in pertinent part:

(1) The parents' child support obligation shall be divided between them in proportion to their adjusted gross incomes.

(2) Except in cases of joint physical custody and split custody as defined in Section 78–45–2, the total child support award shall be determined as follows:

(a) Combine the adjusted gross incomes of the parents and determine the base combined child support obligation using the child support obligation table;

(b) Calculate each parent's proportionate share of the base combined child support obligation by multiplying the combined child support obligation by each parent's percentage of combined adjusted gross income....

"[T]he award amounts resulting from the application of the guidelines are presumed to be correct," Utah Code Ann. § 78–45–7.2(2)(b) (1990), but may be rebutted if there is

[a] written finding or specific finding on the record supporting the conclusion that complying with a provision of the guidelines or ordering an award amount resulting from the use of the guidelines would be unjust, inappropriate, or not in the best interest of a child.

Utah Code Ann. § 78–45–7.2(3) (1990). If the court finds sufficient evidence to suggest deviation from the guidelines, the court shall establish support after considering all relevant factors, including those listed in § 78–45–7(3) (1990).

Whether $100 is an adequate award given application of this approach remains to be seen. If it takes just under $400 a month to support Corey, but there are no unusual circumstances prompting some adjustment, then $100 per month is just right. If it takes considerably more than that to support him, but unusual circumstances exist in Ms. Allred's favor for which no countervailing circumstances exist in Mr. Allred's favor, it may still be acceptable. But if it takes more than $400 per month to support Corey and no such unusual circumstances are shown, Ms. Allred's support obligation needs to be increased to an amount proportional to her income.

We reverse and remand for reconsideration of the support award using the analytical approach outlined herein. The final determination must be supported by adequate findings made in the course of employing this approach.

## TRUST ACCOUNT

 The court ordered the $100 support payments to be placed into a trust account essentially for the purpose of "giv[ing] the child an opportunity to have a little money to go to college." As previously noted, a child support award "should approximate actual need and, when possible, assure the children a standard of living comparable to that which they would have experienced if no divorce had occurred." *Ostler*, 789 P.2d at 716 (quoting *Peterson v. Peterson*, 748 P.2d 593, 596 (Utah Ct.App.1988)). Placing child support payments into a trust fund beyond the reach of the custodial parent does not serve the immediate needs of the child and thus does not serve the purpose of the obligation. Thus, we hold that once the support obligation has been properly determined, it must be paid directly to Mr.

Allred or otherwise made available to him for the on-going support of Corey.

DAVIDSON and BENCH, JJ., concur.