**Virginia B. HALL, Plaintiff and Appellee,**

v.

**Blaine D. HALL, Defendant and Appellant.**

**No. 920052–CA.**

Court of Appeals of Utah.

Aug. 10, 1993.

---

Richard M. Hutchins, Provo, for defendant and appellant.

Craig M. Snyder and Leslie W. Slaugh, Provo, for plaintiff and appellee.

Before BENCH, BILLINGS and ORME, JJ.

ORME, Judge:

Appellant, Blaine Hall, appeals, *inter alia*, the trial court's order distributing marital property between the parties and imputing income to appellant for purposes of calculating alimony and child support. We reverse for lack of adequate findings and remand.

## STANDARD OF REVIEW

This court accords the trial court considerable discretion in determining the financial interests of divorced parties. *Allred v. Allred*, 797 P.2d 1108, 1111 (Utah App.1990). Although "the court's 'actions are entitled to a presumption of validity,'" *id.* (quoting *Hansen v. Hansen*, 736 P.2d 1055, 1056 (Utah App.), *cert. denied*, 765 P.2d 1277 (Utah 1987)), we cannot affirm its determination when the trial court abuses its discretion. *Allred*, 797 P.2d at 1111. The trial court abuses its discretion when it fails to enter specific, detailed findings supporting its financial determinations. *See id.* Findings are adequate only if they are "sufficiently detailed and include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached." *Id.* (quoting *Stevens v. Stevens*, 754 P.2d 952, 958 (Utah App.1988)). *See also Sukin v. Sukin*, 842 P.2d 922, 924 (Utah App.1992) (detailed findings are necessary to determine whether trial court has exercised its discretion in a rational manner).

Appellant raises a number of issues on appeal, some of which have no merit and require no discussion. Accordingly, we see no reason to engage in exhaustive treatment of the facts surrounding the parties' divorce. We recite only the pertinent facts in the course of treating the issues that have merit.

## PROPERTY DISTRIBUTION

During their marriage, the parties constructed a home in Alpine, Utah. Prior to or during the construction of the home, appellee, Virginia Hall, received from her father's estate a total of $21,000. Of this sum, $6,000 was used as a down payment

on the home, and an additional $15,000 was contributed toward its construction.[1] During the divorce proceedings, the marital home was sold. After payment of the existing mortgage obligation, real estate commissions, and other costs of sale, the parties realized a total of $52,403.88 in net equity from the sale of the home. As is typical, the trial court ordered that the net proceeds be divided equally between the parties.[2] The court then deducted from appellant's share certain late fees and delinquent interest in the amount of $192.60. Next, without explanation or explicit recognition that appellant's *separate* funds were being used to reimburse appellee's contribution to the *marital* estate, the trial court ordered that $21,000 of the remainder of appellant's share of the equity be applied to reimburse appellee the funds from her inheritance which were used in the purchase and construction of the parties' home. Appellant was therefore left with net proceeds of approximately $5,000,[3] and appellee received approximately $47,000.

Appellant claims the trial court abused its discretion in ordering that appellee's inheritance be reimbursed solely from his portion of the equity in the home. Rather, appellant argues, the trial court should have returned appellee's inheritance of $21,000 from the total equity of ·approximately $52,000, and then distributed the remainder of the equity equally between the parties. Appellee's contribution of her separate funds *to* the marital estate would thereby be repaid *from* the marital estate, and each party would have then been presumptively entitled to half of the approximately $31,000 remaining home equity, or roughly $15,500.

■ In *Burt v. Burt,* 799 P.2d 1166 (Utah App.1990), this court observed that

trial courts must distribute property between the parties to a divorce in a fair, systematic fashion. *See id.* at 1172 & n. 10. The *Burt* court noted that the trial court should "first properly categorize the parties' property as part of the marital estate or as the separate property of one or the other. Each party is presumed to be entitled to all of his or her separate property and fifty percent of the marital property." *Id.* at 1172. The *Burt* court continued:

> But rather than simply enter such a decree [automatically], the court should then consider the existence of exceptional circumstances and, if any be shown, proceed to effect an equitable distribution in light of those circumstances....

*Id.* Thus, under *Burt,* once a court makes a finding that a specific item is marital property, the law presumes that it will be shared equally between the parties unless unusual circumstances, memorialized in adequate findings, require otherwise. *See also Watson v. Watson,* 837 P.2d 1, 5 (Utah App.1992) (premarital property and inheritances are viewed as separate property, and, normally, equity requires that each party retain the separate property brought to the marriage).

While conceding that the trial court's property division did not result in an equal division of the equity, appellee claims the trial court was not obligated to distribute the equity in the home equally. *See Newmeyer v. Newmeyer,* 745 P.2d 1276, 1279 n. 1 (Utah 1987) ("In determining whether a certain division of property is equitable, ... the relative abilities of the spouses to support themselves after the divorce are pertinent to an equitable ... division of the fixed assets of the marriage."). Appellee

1. The testimony of appellee and her mother established the separate nature of these funds. Appellant does not dispute the separate nature of the funds, nor does he claim that any commingling of these funds with the marital estate destroyed their separate nature.

2. The proceeds from the sale of the parties' home were deposited into a trust account which accrued interest at the rate of $3.67 per day. At the time the trial court entered its findings of

fact, the approximate net equity was $52,741.52. After subtracting $592.26, which was applied toward payment of a delinquent water bill, the court was left with $52,149.26, which it divided equally between the parties.

3. Appellant received exactly $4,882.03 after "repaying" $21,000 to appellee. The net amount due him was applied in full to his delinquent child support and alimony.

contends that in reimbursing her inheritance from appellant's share of the equity, the trial court took into account her special circumstances, i.e., her lack of education and work experience, and the fact that the needs of the parties' autistic child and two pre-school age children precluded appellee from seeking employment outside the home. Appellant counters that these concerns were abundantly addressed by means of child support and an award of permanent alimony.

We recognize the power of the trial court to effect an equitable distribution of property by considering both parties' "contributions during the marriage and their circumstances at the time of the divorce." *Id.* at 1278. However, as this court held in *Burt*, "the court's division of the estate cannot stand undisturbed when we are not presented with sufficient findings to demonstrate that the court's ruling comports with established law." 799 P.2d at 1172.

From all that appears, the court made a simple conceptual error in providing for the repayment of appellee's inheritance. The trial court made no findings as to any exceptional circumstances which took this case out of the presumptive rule of *Burt* and warranted repaying appellee's inheritance solely out of appellant's portion of the equity in the parties' home. Such an unequal distribution of the parties' marital property makes no sense in the absence of findings justifying the decision, *see Walters v. Walters*, 812 P.2d 64, 68 (Utah App. 1991), *cert. denied*, 836 P.2d 1383 (Utah 1992), especially since appellee did not seek this result on any particular basis and where appellee's lack of education and the special needs of the children do appear to have been thoroughly dealt with in the award of permanent alimony and child support, which we do not disturb. Absent findings that would justify departure from the presumptive rule of equal distribution, we reverse and remand to give the trial

judge an opportunity to enter findings supporting the unequal distribution, or, in the alternative, to divide the proceeds from the sale of the home equally after first subtracting the amount necessary to reimburse appellee's contribution. *See Burt*, 799 P.2d at 1170, 1172.

## IMPUTATION OF INCOME

Several years ago, while employed in the computer business in California, appellant earned a salary of $55,000. Appellant later found employment in Utah as a computer consultant and software developer and worked in that capacity for at least the last three years of the parties' marriage. Appellant's gross earnings listed on his income tax returns for 1988, 1989, and 1990 averaged in excess of $100,000 per year, with average monthly gross earnings in excess of $8,500.[4]

About ten days before trial, appellant started a new job in Vancouver, Washington, at a salary of $40,000 per year. At trial, appellant requested that the court's child support and alimony determinations be based on his current $40,000 per year income level rather than on his historical income of approximately $100,000 per year.[5] On the basis of the evidence introduced at trial as to appellant's income, and noting the marked disparity between appellant's $40,000 salary at the time of trial and his income over the last three years of his marriage, the trial court concluded that the only way to accurately gauge appellant's income for purposes of determining his support obligations was to rely on the historical earnings of appellant.

The court adopted rather detailed findings of fact based on the evidence adduced at trial, which established that appellant's average historical income over the three and one half years prior to trial amounted to $98,498.75 per year, with a monthly average gross income of $8,208.21.

---

4. During the divorce proceedings, the trial court also received evidence as to the deposits made by appellant to his credit union account in Los Angeles, California. That account balance totalled approximately $96,000 in 1990.

5. Interestingly, in proposed findings submitted to the court just a few days before trial, appellant included a finding stating he had an income of $66,000 per year.

Appellant challenges the trial court's rulings regarding his child support and alimony obligations insofar as the trial court based these obligations on appellant's historical income rather than on his income at the time of trial. Appellant's primary argument in this regard is that the trial court erred in imputing income to him without explicitly determining that he was voluntarily unemployed or underemployed as required under Utah Code Ann. § 78-45-7.5(7)(a) (1992). Additionally, he makes a subsidiary claim that in fixing the amount of income to be imputed to appellant, the trial court failed to follow statutory directives in assessing his "employment potential and probable earnings" as required under Utah Code Ann. § 78-45-7.5(7)(b) (1992).

## A. Propriety of Imputation

■ In order to evaluate the merit of appellant's first imputation argument, we must determine whether the trial court's decision to impute income was supported by adequate findings in light of Utah Code Ann. § 78-45-7.5(7)(a) (1992), which reads: "Income may not be imputed to a parent unless the parent stipulates to the amount imputed or a hearing is held and a finding made that the parent is voluntarily unemployed or underemployed." [6]

While we agree with appellee that section (7)(a) does not specifically require a trial court, in making a "finding" of underemployment, to parrot the exact language of the statute, it is well established that where a statute expressly requires a trial court to make a threshold finding before taking specified judicial action, the trial court abuses its discretion if it proceeds without first making the legislatively mandated finding. See Hill v. Hill, 841 P.2d 722, 724-25 (Utah App.1992) (court abused its discretion by departing from child support guidelines without first finding that following the guidelines would be unjust,

inappropriate or not in best interest of the child as required by Utah Code Ann. § 78-45-7.2(3) (1992)); Thronson v. Thronson, 810 P.2d 428, 433 (Utah App.) (court abused its discretion by awarding joint legal custody without first determining that both parents agreed to the order as required by Utah Code Ann. § 30-3-10.2(2)(a) (1989)), cert. denied, 826 P.2d 651 (Utah 1991). A careful review of the trial court's findings reveals not only the absence of any explicit finding that appellant was underemployed, but also a lack of subsidiary findings that point to such a determination having been implicitly made. Thus, the court's approach cannot be justified merely as a failure to parrot the exact language prescribed by the statute, but is instead a substantial departure from the procedure mandated by the Legislature.

■ The court's decision is by no means devoid of detailed factual findings. Indeed, the trial court entered commendably detailed findings concerning appellant's historical income, his present income, and his occupational qualifications. However, the extensive detail apparent in the court's findings of fact was pertinent to factors required under section 78-45-7.5(7)(b)—the section detailing factors to consider in arriving at the amount of income to impute. The findings made by the trial court regarding the amount of income to impute, per section (7)(b), do not become relevant until after it determines, as a threshold matter, that income should be imputed because the parent is *voluntarily* unemployed or underemployed, as required by section (7)(a). We do know from the findings that appellant now earns considerably less than he has in the recent past. We can only guess at whether this state of affairs stems from appellant's volition or, as he contends, from the simple fact that his once-coveted computer expertise in a narrow field of business has been rendered

---

**6.** Although in briefing, appellant seems to have claimed the trial court erred in failing to hold a separate hearing limited to determining appellant's income for purposes of imputing income pursuant to section 78-45-7.5(7)(a), he conceded at oral argument that holding such a

hearing in a case like the instant one would be pointless. We note that in Cummings v. Cummings, 821 P.2d 472, 480 (Utah App.1991), this court upheld the trial court's imputation of income to the wife despite the trial court's failure to hold a separate hearing on the matter.

all but obsolete by changes in industry and technology.

■ The fact that the trial court entered findings required by section (7)(b) does not alter the fact that the trial court failed to enter any findings required under section (7)(a). The findings on the whole are insufficient if they omit critical findings required by the statute. *Allred v. Allred,* 797 P.2d 1108, 1111 (Utah App.1990). *See also Jeffries v. Jeffries,* 752 P.2d 909, 911 (Utah App.1988). Because the findings before us do not include any findings to the effect that appellant was voluntarily underemployed, they are statutorily insufficient.

■ The trial court's decision to impute income may nonetheless be affirmed if the failure to have made the missing findings can be viewed as harmless error. One method is to show that "the undisputed evidence clearly establishes the factor or factors on which findings are missing." *Allred,* 797 P.2d at 1111. In the case before us, at least some evidence suggests that appellant's current, diminished income level resulted not from his personal preference or voluntary decisions, but instead resulted from events beyond his control. For example, appellant claims his clients did not renew lucrative consulting contracts, and apparently the only job opportunity available to him was the job he eventually accepted at $40,000 per year. Moreover, the parties hotly contest the adequacy of appellant's efforts to find more gainful employment. Accordingly, because the evidence in this case is not "clear, uncontroverted, and capable of supporting only a finding in favor of the judgment," we cannot affirm on the basis of undisputed evidence in the record. *Kinkella v. Baugh,* 660 P.2d 233, 236 (Utah 1983).

■ Furthermore, even given controverted evidence, we could affirm the trial court's decision to impute income, absent outright expression of the statutorily mandated finding, if the absent findings can reasonably be implied. Unstated findings can be implied if it is reasonable to assume that the trial court actually considered the controverted evidence and necessarily made a finding to resolve the controversy, but simply failed to record the factual determination it made. *See State v. Ramirez,* 817 P.2d 774, 787–88 n. 6 (Utah 1991). *See also Adams v. Board of Review,* 821 P.2d 1, 5 (Utah App.1991) ("A finding may be implied if it is clear from the record, and therefore apparent upon review, that the finding was actually made as part of the tribunal's decision."). Thus, where the court formulates detailed subsidiary findings of fact which underlie a finding of underemployment, and which, by themselves, show the steps by which the court arrived at its apparent conclusion that a parent is underemployed under section 78–45–7.5(7)(a), the court's decision to impute income will not be invalidated solely on the ground that the "finding" of voluntary underemployment was not couched in the exact language of the statute. This is especially true since a "finding" on the ultimate issue of voluntary underemployment is in reality more like a legal conclusion and is more meaningfully made if supported by underlying findings of historical fact.[7]

■ Findings may not be implied, however, when the "ambiguity of the facts" makes such an assumption unreasonable. *Ramirez,* 817 P.2d at 788. This court recently held that we will not imply any missing finding where there is a "matrix of possible factual findings" and we cannot

---

7. In many cases, where a court fails to phrase findings in the exact language of the statute, the findings nevertheless reflect methodical and extensively detailed treatment of the facts, which is often more insightful and helpful on appeal than a shorter, more cursory recitation of the exact statutory language would have been. Such an approach frequently promotes more meaningful appellate review by providing the appellate court with insight into the steps taken by the trial court in arriving at its decision. *Cf. LaSal Oil Co. v. Department of Envtl. Quality,* 843 P.2d 1045, 1047–48 (Utah App.1992) (contrasting commendable detail of findings made by administrative law judge with sparse, conclusory findings made by department head and remanding for more adequate findings "to more fully articulate" reasons for department head's decision).

ascertain the trial court's actual findings. *See Adams,* 821 P.2d at 6.

A finding that appellant was voluntarily underemployed cannot properly be implied in this case. Although the trial court found that appellant is currently earning less than he was previously, that isolated finding does not answer the critical question of whether the drop in earnings was voluntary. Rather, appellant's current earnings, as compared to his historical income, is merely one element in the matrix of factual issues affecting the ultimate finding of whether appellant is underemployed. Many critical questions are left unanswered: What are appellant's abilities? Is appellant's current salary below the prevailing market for a person with his abilities? Are there any job openings for a person with appellant's abilities? At a minimum, the trial court must determine appellant's employment capacity and earnings potential—which it failed to do even in its determination of the amount to impute under section (7)(b)—before it could logically conclude that he is, in fact, underemployed. Inasmuch as there are no subsidiary findings showing that the trial court actually found that a person with appellant's abilities could be earning more in the relevant market, we cannot imply a finding that appellant is underemployed. We accordingly reverse the trial court's determination that appellant is underemployed and remand for evaluation of that issue and the entry of appropriate findings.

### B. Amount of Imputed Income

■ Appellant additionally argues that even assuming the propriety of imputing additional income to him, the trial court incorrectly fixed the amount of income to impute as set forth in Utah Code Ann. § 78–45–7.5(7)(b) (1992). That section provides that "[i]f income is imputed to a parent, the income shall be based upon employment potential and probable earn-

ings as derived from work history, occupation qualifications, and prevailing earnings for persons of similar backgrounds in the community." *Id.* Appellant specifically assigns error to the court's failure to adequately address "employment potential and probable earnings." *Id.* The point is well made.

As previously noted, the trial court made elaborate underlying findings regarding appellant's work history and prior earnings, based on tax returns and bank records, and occupational qualifications, based on his employment history. Yet the court made no findings, explicit or implicit, concerning "prevailing earnings for persons of similar backgrounds in the community" as required by section (7)(b).

■ Although appellant's unique position as an independent consultant, trained in an unusual computer language, might render meaningful comparison of appellant's income with that of other computer programmer/analysts difficult, we cannot disregard a statutory mandate solely on the basis of a litigant's unique circumstances. The statute does not require a comparison with persons of exactly the same background, but instructs courts to evaluate earnings "for persons of *similar* backgrounds." *Id.* (emphasis added). While an abundance of independent programmers might not inhabit the local market, surely computer programmers in diverse positions must be employed locally under circumstances which would permit some level of meaningful comparison. If an adequate pool of consultant programmer/analysts cannot be discovered, employee programmers who engage in similar programming activities might provide a useful comparison.[8] At a minimum, the trial court must undertake some effort to evaluate the employment market for programmers in general, and then make its best

---

**8.** Appellant contends his once-lucrative market niche has been lost due to the ability of his former customers to now do the work he had previously done using their own employees. Indeed, a company would be unlikely to expend extravagant amounts for independent consult-

ing services if it could utilize in-house programmers to accomplish the same goals less expensively. If appellant's premise is sound, employee programmers may well prove to be the only reliable reference point.

effort to adjust for appellant's unique skills.

█ Accordingly, if upon remand the trial court finds that appellant was voluntarily underemployed, it must then make findings as to prevailing earnings for persons of backgrounds similar to that of appellant, as required by section (7)(b), in determining the *amount* of income to impute.

## ATTORNEY FEES

█ Despite the fact that appellee has legal custody of all nine minor children, one of whom is autistic and requires extra attention, and despite the fact that she presently has no training or experience which would allow her to work outside the home, appellant argues that the court failed to make sufficient factual findings to support its award of attorney fees to appellee. We include appellant's challenge to the trial court's award of attorney fees among those previously characterized as being without merit and accordingly leave the award undisturbed.

█ Appellee, on the other hand, claims she is entitled to attorney fees on appeal. "Generally, when the trial court awards fees in a domestic action to the party who then substantially prevails on appeal, fees will also be awarded to that party on appeal." *Lyngle v. Lyngle*, 831 P.2d 1027, 1031 (Utah App.1992). *See also Burt v. Burt*, 799 P.2d 1166, 1171 (Utah App.1990). When an appeal involves multiple issues, the party receiving attorney fees below need not prevail on *every* issue in order to be awarded fees on appeal. *See Bell v. Bell*, 810 P.2d 489, 494 (Utah App. 1991) (party who "prevailed on the main issue on appeal" received fees); *Ostler v. Ostler*, 789 P.2d 713, 717 (Utah App.1990) (party prevailing on child support issue, but losing on issue of dividing retirement account with nominal value, received fees). In contrast to the instant case, *Bell*, *Lyngle*, and *Ostler* were all situations where the party seeking attorney fees on appeal prevailed on the most significant issues in controversy. Here, except for the compar-

atively minor issues we dismissed out of hand, appellant prevailed on the major issues in dispute. He secured remand and reconsideration of both the home equity distribution and the imputation of income. Appellee therefore is not entitled to attorney fees related to this appeal.

## CONCLUSION

In allocating equity in the parties' home, the trial court failed to make adequate findings to justify its departure from the presumptive rule of equal distribution of property. We further agree with appellant that the court erred by not making the statutorily mandated findings that he was underemployed as a prerequisite to its decision to impute income to appellant. If upon remand for the forgoing issues, the court adheres to its decision to impute income to appellant, it must consider "prevailing earnings for persons of similar backgrounds in the community" in setting the amount to impute. Finally, we leave undisturbed the trial court's award of attorney fees to appellee, but refuse to award fees to her for this appeal. We accordingly reverse and remand for further findings consistent with this opinion.

BENCH and BILLINGS, JJ., concur.