1999 UT App 041

**Mary J. REHN, Appellee,**

v.

**Charles C. REHN, Appellant.**

**No. 971700–CA**

Court of Appeals of Utah.

Feb. 19, 1999.

---

**3.** This defense has since been specifically abrogated by statute. *See* Utah Code Ann. § 76–2– 304.5(1) (Supp.1998).

Steve S. Christensen, Salt Lake City, for Appellant.

Terry L. Cathcart, Bountiful, for Appellee.

Before Judges WILKINS, GREENWOOD, and BILLINGS.

## OPINION

WILKINS, Presiding Judge:

¶ 1 Appellant Charles C. Rehn appeals the trial court's decree of divorce, challenging the court's awards of alimony, child support, debt allocation and attorney fees, as well as the trial court's decision precluding his expert witness from testifying. We affirm in part and reverse and remand in part.

## BACKGROUND

¶ 2 Charles and Mary J. Rehn divorced on September 26, 1997, following a twenty-year marriage. Two children, who at the time of trial were nine and six years old, were born of the marriage.

¶ 3 Before trial, the court entered a scheduling order directing the parties to exchange witness lists "as per the rules." Two days before trial, Mr. Rehn informed Ms. Rehn that he intended to call a vocational expert who would testify as to Ms. Rehn's employment opportunities for purposes of determining alimony. Following this, on the day before trial, the parties agreed to a continuance. Accordingly, Mr. Rehn's attorney set a new trial date and immediately called Ms. Rehn's attorney to inform him. However, Ms. Rehn's counsel refused to continue the case, indicating he was going to trial the next day.

¶ 4 At trial, the court refused to allow appellant's witness to testify. It ruled that because appellant failed to disclose the witness until one day prior to trial, the disclosure was "untimely" and would inevitably "prejudice" Ms. Rehn as she would be unable to adequately consult with a counter-expert within twenty-four hours. Thereafter, the court entered its findings of fact, conclusions

of law, and decree of divorce. The court awarded joint legal and physical custody of the children giving Mr. Rehn visitation rights pursuant to Utah Code Ann. § 30–3–35 (1995). Moreover, the court ordered Mr. Rehn to pay Ms. Rehn $1200 per month alimony on a permanent basis, child support in the amount of $1045 per month which it determined using a sole custody worksheet, 80% of the parties' $19,000 tax debt, and $6,880 of Ms. Rehn's attorney fees.

¶ 5 Appellant now challenges the adequacy of the court's findings regarding alimony, child support, debt allocation and attorney fees. In addition, he seeks a new trial based on the court's exclusion of his expert witness.

## I. ADEQUACY OF TRIAL COURT'S FINDINGS

### 1. *Alimony*

¶ 6 First, appellant challenges the adequacy of the trial court's findings underlying its alimony award. In determining whether to award alimony and in setting the amount, a trial court must consider the needs of the recipient spouse; the earning capacity of the recipient spouse; the ability of the obligor spouse to provide support; and, the length of the marriage. *See* Utah Code Ann. § 30–3–5(7)(a)(i)–(iv) (1998); *Jones v. Jones*, 700 P.2d 1072, 1075 (Utah 1985); *see generally Childs v. Childs*, 967 P.2d 942 (Utah Ct. App.1998). "Failure to consider these factors constitutes an abuse of discretion," *Stevens v. Stevens*, 754 P.2d 952, 958–59 (Utah Ct.App.1988), resulting in reversal "unless pertinent facts in the record are clear, uncontroverted, and capable of supporting only a finding in favor of the judgment." *Schaumberg v. Schaumberg*, 875 P.2d 598, 602 (Utah Ct.App.1994). Moreover, the trial court must make detailed findings on all material issues, i.e. the *Jones* factors, which "should . . . include enough subsidiary facts to disclose the steps by which the ultimate conclusion on each factual issue was reached." *Stevens*, 754 P.2d at 958 (citation omitted).

¶ 7 As to the first factor, we stated in *Baker* that a trial court may not "merely restate [the recipient spouse's] testimony [regarding] her monthly expenses. . . ." *Baker v. Baker*, 866 P.2d 540, 546 (Utah Ct.App. 1993). The court must state that "the calculation of monthly expenses is reasonable" and must explain how it arrived at the monthly amount, or at least from the record, allow us to make this determination ourselves. *Id.* Appellant challenges the latter of these requirements arguing that the court abused its discretion by failing to make findings specifically delineating *which expenses* the court used to determine Ms. Rehn's monthly needs.

¶ 8 Appellant's claim is without merit. While the trial court did not *expressly* articulate which expenses it used to arrive at the alimony award, there is no requirement that a court make such a finding. In any event, the court incorporated by reference Ms. Rehn's expenses in its findings. More importantly, however, the trial court stated that the calculation of expenses was reasonable and adequately explained how it arrived at the alimony award. Specifically, the court found that Ms. Rehn had a need for support; concluded that $3,300 was not an unreasonable monthly expense for a mother and two children; indicated Ms. Rehn's needs were well established, reasonable and real; and stated how it calculated the alimony award (explaining that Ms. Rehn's monthly expenses totaled $3,317, and by subtracting Ms. Rehn's monthly gross income of $1,072 and child support award of $1,045, an alimony award of $1,200 was proper). In light of these findings, we hold that the trial court did not err.

¶ 9 As to the second factor, appellant argues that the court erred in finding there was no issue of underemployment and in failing to use Ms. Rehn's historical earnings to impute a higher income to her. Again, we disagree. This case does not present a situation where the trial court merely referenced Ms. Rehn's monthly income or failed to adequately consider her earning capacity. *See Chambers v. Chambers*, 840 P.2d 841, 843 (Utah Ct.App.1992) (holding blanket reference to recipient's income insufficient; proper findings would address the recipient's level of education, health, and immediate or eventual employability). To the contrary, the trial court's findings specify Ms. Rehn's

established monthly income, and in doing so consider the "historical roles" both parties played in the marriage—that is, Ms. Rehn was the primary caretaker of the parties' minor children. Moreover, because it is sufficient to impute a lesser income to the recipient spouse so that she might give adequate care and nurturing to the parties' minor children, *see Fletcher v. Fletcher,* 615 P.2d 1218, 1223 (Utah 1980), we hold that the trial court did not err in imputing lesser earnings to Ms. Rehn.

¶ 10 Regarding the third factor, appellant argues that the court abused its discretion in failing to make adequate findings addressing appellant's expenses and disposable income. Again, we disagree. We have previously indicated that "simply stating [the obligor's] earnings does not amount to an adequate finding of fact as to his ability to provide support. To be sufficient, the findings should also address [the obligor's] needs and expenditures, such as housing, payment of debts, and other living expenses." *Baker,* 866 P.2d at 547; *see also Chambers,* 840 P.2d at 843–44 (reversing and remanding when court simply stated that "the defendant has the ability to pay"). In this case, the findings adequately address Mr. Rehn's ability to pay. The court stated that the ability to earn income favors Mr. Rehn; the ratio of earned income is about 80% to Mr. Rehn, 20% to Ms. Rehn; Mr. Rehn has the ability to pay; "the parties are simply going to have to tighten up their belts and make do with less"; referred to Mr. Rehn's income tax liabilities and other expenses; and, incorporated by reference exhibits 3 and 5 which both list Mr. Rehn's monthly income. As such, the trial court did not err. Moreover, the court properly considered the length of the parties' marriage in awarding alimony when it indicated that "this is a twenty year marriage where alimony is appropriate."

¶ 11 In addition, appellant argues that the trial court erred in awarding alimony beyond the duration of the parties' twenty-year marriage when it awarded permanent alimony to Ms. Rehn without complying with Utah Code Ann. § 30–3–5(7)(h) (1998), which permits a court to award alimony beyond the duration of the parties' mar-

riage only if it finds "extenuating circumstances." Whether this statute requires a court to *explicitly* find extenuating circumstances, as appellant argues, presents an issue of statutory interpretation, which is a question of law, *see Child v. Newsom,* 892 P.2d 9, 10 (Utah 1995), requiring us to first examine the statute's plain language and then to resort to other methods of statutory interpretation if the language is ambiguous. *See Matrix Funding Corp. v. Auditing Div. of the Utah State Tax Comm'n.,* 868 P.2d 832, 833 (Utah Ct.App.1994). We construe the statute to give effect to legislative intent and assume "the Legislature used each term advisedly, and . . . give effect to each term according to its ordinary and accepted meaning." *Versluis v. Guaranty Nat'l Cos.,* 842 P.2d 865, 867 (Utah 1992).

¶ 12 Section 30–3–5(7)(h) provides that "Alimony may not be ordered for a duration longer than the number of years that the marriage existed unless, at any time prior to termination of alimony, *the court finds extenuating circumstances* that justify the payment of alimony for a longer period of time." Utah Code Ann. § 30–3–5(7)(h) (1998) (emphasis added).

¶ 13 In awarding permanent alimony, the trial court failed to explicitly use the term "extenuating circumstances" in its findings, instead stating as follows:

> This is a 20–year marriage where alimony is appropriate. Alimony should be awarded permanently for at least 20 years, until, if and when, there is a legal event that would terminate the payment or receipt of alimony.
>
> . . . .
>
> Alimony has been carefully considered factoring the length of the marriage, disparity in the abilities of the parties to earn income, the historical roles . . . both parties have played in this family during the 20–year marriage, the age of the children who are the primary responsibility of the Plaintiff, and all other pertinent factors.

Moreover, in its divorce decree, the court ordered "Defendant . . . to pay Plaintiff alimony in the sum of $1200 per month permanently . . . until terminated by law."

¶ 14 Based upon principles of statutory construction we agree that the trial court erred in its alimony award. In reviewing the plain language of this statute, we conclude that a court must explicitly make a finding of "extenuating circumstances" in order to extend the alimony period beyond the duration of the marriage. Because the court's findings are deficient in this area we remand for *the entry of further findings addressing* whether extenuating circumstances exist so as to satisfy section 30–3–5(7)(h).

## 2. *Child Support*

¶ 15 Next, we examine appellant's claim that the court failed to comply with Utah's statutory child-support guidelines when it applied a sole *custody worksheet without* making the required findings under Utah Code Ann. § 78–45–7(3) (1996) to support such an order.

¶ 16 Utah law requires a court to use a joint custody child support worksheet when a child stays with each parent overnight for more than 25% of the year (and both parents pay overnight expenses and support child) *or* make findings supporting its deviation. *See Udy v. Udy,* 893 P.2d 1097, 1099–1100 (Utah Ct.App.1995) (requiring court to use joint custody child support worksheet or make findings of fact justifying use of sole custody worksheet when overnight visits exceeded threshold for joint custody under § 78–45–2(10) [1]); *see also* Utah Code Ann. § 78–45–2(13) (Supp.1998) (defining "joint physical custody"). In deviating from the guidelines, the trial court must at least consider the seven factors listed in Utah Code Ann. § 78–45–7(3) (1996) and enter findings on all of these factors.[2] *See Allred v. Allred,* 797 P.2d 1108, 1111 (Utah Ct.App.1990); *see also Udy,* 893 P.2d at 1100.

A court abuses its discretion when it fails to enter detailed findings on each of these factors. *See Allred,* 797 P.2d at 1111.

¶ 17 In this case, the court found that the parties stipulated to child support pursuant to the guidelines, awarded Mr. Rehn visitation pursuant to Utah Code Ann. § 30–3–35, and using a sole custody worksheet, ordered support in the amount of $1045 per month. Ms. Rehn argues that the court did not err in using a sole custody worksheet because the parties' stipulation to child support was in fact a stipulation to use the sole custody worksheet. We agree with the appellant, however, that the stipulation to child support referred to the use of the child support guidelines, not to the issue of sole custody. In fact, the court's findings indicate that the parties stipulated to joint physical custody of the children. Based on this award, it is evident that Mr. Rehn had custody of the children over 25% of the time and, in addition to his support obligation, contributed to the overnight expenses of the children. As such, the court was required to follow the mandate of Utah's child support guidelines and use a "joint custody child support worksheet or make findings of fact justifying its deviation." *Udy,* 893 P.2d at 1100.

¶ 18 Here, the trial court's findings fail to explain why the court chose not to use a joint custody worksheet. Accordingly, we reverse and remand for the entry of sufficient findings to support the court's deviation from the Utah child support guidelines or a recalculation of child support employing the joint custody worksheet. *See id.*

## 3. *Allocation of Debt*

¶ 19 Appellant further attacks the trial court's allocation of marital debt between the parties. Specifically, appellant

---

**1.** This section is now recodified as section 78–45–2(13) (Supp.1998).

**2.** Utah Code Ann. § 78–45–7(3) (1996) provides in pertinent part:

If the court finds sufficient evidence to rebut the guidelines [i.e. guidelines are unjust, inappropriate, or not in the best interest of the child as stated in section 78–45–7.2], the court shall establish support after considering all relevant factors, including but not limited to:

(a) the standard of living and situation of the parties;
(b) the relative wealth and income of the parties;
(c) the ability of the obligor to earn;
(d) the ability of the obligee to earn;
(e) the needs of the obligee, the obligor, and the child;
(f) the ages of the parties;
(g) the responsibilities of the obligor and the obligee for the support of others.

maintains that the court erred in failing to make findings as to what facts the court relied on when it ordered Mr. Rehn to pay 80% of the parties' $19,000 income tax debt. In a divorce action, there is no fixed formula upon which to determine a division of debts. *See Finlayson v. Finlayson,* 874 P.2d 843, 847 (Utah Ct.App.1994). However, such allocation must be based upon adequate factual findings which ruling we will not disturb absent an abuse of discretion. *See id.; Boyle v. Boyle,* 735 P.2d 669, 670–71 (Utah Ct.App. 1987).

¶ 20 The trial court's findings are sufficient.[3] In allocating the parties' income tax debt, the court divided the potential income tax debt according to each person's ratio of earned income—80% attributed to appellant; 20% attributed to appellee—which in Utah is a common and adequate practice of allocating debt. *See Warren v. Warren,* 655 P.2d 684, 687 (Utah 1982) (determining trial court did not err in ordering plaintiff to pay income tax debt constituting one-sixth of her income). In this case, it is also evident that the court sufficiently considered the income of both the parties, their respective abilities to pay, and the needs of Ms. Rehn and her children. As such, we affirm the court's division of marital liabilities.

#### 4. *Attorney Fees*

¶ 21 Appellant also challenges the sufficiency of the court's findings in awarding attorney fees. Specifically, he argues that the fee award is devoid of factual findings addressing Ms. Rehn's need for assistance, Mr. Rehn's ability to pay, and the reasonableness of the fee award. We disagree.

¶ 22 A trial court has the power to award attorney fees in divorce proceedings pursuant to Utah Code Ann. § 30–3–3 (1998). Such an award must be based on sufficient findings addressing the financial need of the recipient spouse; the ability of the other spouse to pay; and the reasonableness of the fees. *See Schaumberg v. Schaumberg,* 875 P.2d 598, 604 (Utah Ct.App.1994); *Bell v.*

*Bell,* 810 P.2d 489, 493 (Utah Ct.App.1991) (remanding for redetermination of attorney fees when court failed to address wife's need or husband's ability to pay fees). The court may also consider the "difficulty of the litigation, the efficiency of the attorneys, the reasonableness of the number of hours spent on the case, the fee customarily charged in the locality, the amount involved in the case and the result attained, and the experience and expertise of the attorneys involved." *Bell,* 810 P.2d at 493–94. Whether the trial court's findings of fact in awarding attorney fees are sufficient is a question of law which we review for correctness. *See Endrody v. Endrody,* 914 P.2d 1166, 1169 (Utah Ct.App. 1996).

¶ 23 This is not a case where the trial court awarded Ms. Rehn $6,880 in attorney fees without explaining how it arrived at this amount. *See Potter v. Potter,* 845 P.2d 272, 274–75 (Utah Ct.App.1993). Rather, the trial court found, among other things, that Ms. Rehn had the "need for assistance with attorney fees," appellant had "the ability to pay," that the fees were "necessarily incurred" by Ms. Rehn, and the work was reasonable given the scope and time of the case. Moreover, it is evident that the court arrived at the award based on the parties' earned income ratios—80% attributable to appellant; 20% attributable to appellee. We conclude that these findings are sufficient. Accordingly, we affirm the award of attorney fees.

### II. EXCLUSION OF EXPERT WITNESS

¶ 24 Finally, appellant argues that because the court did not impose an explicit deadline for designating witnesses, it erred in refusing to allow his expert witness to testify at trial. Specifically, appellant argues that language used in the order—"as per the rules"—does not "judicially impose a deadline" as required by law to sanction a party in such a manner.

---

3. In relevant part, the findings are as follows:
   Each party should be ordered to file jointly for tax year 1996 and divide any refund from that filing. If there is any liability from that filing,

[Ms. Rehn] should be ordered to pay 20 percent of that liability and [Mr. Rehn] 80 percent of that liability.

¶ 25 Trial courts have broad discretion in managing cases assigned to their courts which we will not interfere with absent an abuse of discretion. *See Berrett v. Denver & Rio Grande W. R.R.*, 830 P.2d 291, 293 (Utah Ct.App.1992). If a trial court erroneously excludes a witness, we will reverse only "if the error was prejudicial to the substantial rights of a party." *Id.; see also* Utah R. Civ. P. 61.

¶ 26 Utah R. Civ. P. 37(b)(2) empowers a trial court to sanction a party for failure to obey a discovery order entered under rule 26(f) (i.e. failure to comply with witness disclosure order). *See Berrett*, 830 P.2d at 294–95. Under rule 37(b)(2), a court may prohibit the offending party from introducing certain matters into evidence, such as excluding a party's witness. *See id.* However, "absent an order creating a judicially imposed deadline [for the disclosure of witness lists], a trial court may not sanction a party by excluding its witnesses under rule 37(b)(2)." *Id.* at 296 (requiring order impose "clear and affirmative deadline" for disclosure of witness lists). Utah courts have imposed such a requirement so that parties may depose the witnesses, plan for effective cross-examination, and obtain rebuttal testimony. *See DeBry v. Cascade Enter.*, 879 P.2d 1353, 1361 (Utah 1994).

¶ 27 We agree with appellant that the court, in directing the parties to exchange their witness lists "as per the rules," failed to adequately set a deadline to disclose witness lists. In referencing the rules, the court failed to set a "clear and affirmative deadline" as required by *Berrett. Berrett*, 830 P.2d at 295. While the court, in referencing "the rules," *may* have been referring to Utah Code of Judicial Admin. R. 4–502(5) which states that "[a]ll discovery proceedings shall be completed, *including all responses thereto* . . . no later than (30) days before the date set for trial of the case," we hold that such a blanket reference is too general and ambiguous to apprise parties of their duty to disclose the witness information. In so ruling, we hold that in judicially imposing a deadline for the disclosure of witness lists in a civil case, a court must explicitly (either orally or in writing) impose a month and day deadline. *See Berrett*, 830 P.2d at 296 n. 7 (indicating written pretrial orders not required, but encouraged).

¶ 28 In holding that the court abused its discretion, we now determine whether the erroneous exclusion of appellant's witness was prejudicial to the substantial rights of the appellant, thus warranting reversal. Under Utah R. Civ. P. 61, when a court errs in excluding evidence, no new trial or otherwise disturbing the judgment is warranted, unless the error affected a substantial right of the party. In *Berrett*, we interpreted this to mean that

> [I]f the error appears to be of such a nature that it can be said with assurance that it was of *no material consequence* in its affect upon the trial because reasonable minds would have arrived at the same result, regardless of such error, it would be harmless and the granting of a new trial would not be warranted. On the other hand, if it appears to be of sufficient moment there is a reasonable likelihood that in the absence of such error a *different result would have eventuated,* the error should be regarded as prejudicial and relief should be granted. . . . [If] we cannot, with any degree of assurance, affirm that the use of such evidence would not have been helpful to the plaintiff, the doubt should be resolved in favor of allowing him to have a full and fair presentation of his cause. . . .

*Berrett*, 830 P.2d at 293 (citation omitted) (remanding for new trial when court found expert's testimony could have been "helpful" to case) (emphasis added).

¶ 29 We are not convinced that the inclusion of appellant's witness would have produced a different result in the court's calculation of alimony. Appellant indicates that his witness, a vocational expert, would have testified about Ms. Rehn's probable earnings as derived from her work history, occupational qualifications and earnings of those similarly situated in the community. However, after reviewing the court's findings, it is evident that it already had sufficient information regarding Ms. Rehn's historical earning capacity but found no issue of

"unemployment or underemployment based on the historical roles" the parties assumed in the marriage. As such, we are not persuaded that such cumulative testimony from the witness would have been helpful in the court's award of alimony. Therefore, we refuse to disturb the trial court's ruling.

## CONCLUSION

¶ 30 We conclude that the court erred in awarding permanent alimony without explicitly finding "extenuating circumstances" as required by Utah Code Ann. § 30-3-5(7)(h) (1998). In so ruling, we interpret this statute to require a court to make an explicit finding of extenuating circumstances. Accordingly, we remand for the entry of further findings addressing whether extenuating circumstances exist to justify a permanent award of alimony.

¶ 31 With respect to child support, we conclude that the court erred in failing to make detailed findings justifying its deviation from a joint custody schedule as required by the guidelines in this situation. We therefore reverse the award of child support and remand for the entry of sufficient findings to support the court's deviation from the Utah child support guidelines, *see* Utah Code Ann. § 78-45-7(3), or a recalculation of child support employing the joint custody worksheet.

¶ 32 We affirm the trial court's ruling in all other respects.

¶ 33 PAMELA T. GREENWOOD, Associate Presiding Judge, and JUDITH M. BILLINGS, Judge, concur.